SCHOOLCRAFT CIVIC ASSOCIATION *v.* DiLORETO.

1. COVENANTS—CONSTRUCTION—PLOT.

   The term "plot", as used in set of restrictions applicable to subdivision, *held,* not ambiguous, so as to permit resort to extraneous matters, but to have been intended to be any portion of the subdivision, whether made up of several lots or of parts of a lot or lots, which meets the minimum requirements of the restrictions as to area and frontage upon a street.

2. SAME—PLOT.

   Recourse to dictionary definitions or decisions of other courts concerning the meaning of the term "plots," generally, will not be made when construing the term as used in set of restrictions applicable to subdivision, when the meaning is made abundantly clear by the terms of the restrictions themselves.

3. SAME—PLOT.

   The term "plot", as variously used in set of restrictions applicable to subdivision, *held,* not to have been so used as to necessitate construction that it was to be made up of whole lots and not of parts or combinations of parts thereof.

4. SAME—MINIMUM AREA RESTRICTIONS—SETBACK LINES.

   Claim that minimum area restriction applied only to certain short lots, in lieu of, or to make up for an alleged lack of, sideline setback restrictions *held,* without merit in view of sideline setback restrictions made specifically applicable to such short lots.

5. SAME—MINIMUM AREA RESTRICTION—STREET FRONTAGE.

   Minimum area and street frontage restrictions *held,* to apply to entire subdivision in the absence of any showing they do

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts § 237; 20 Am Jur, Evidence § 1142 *et seq.*
[1–3] 12 Am Jur, Contracts § 236; 14 Am Jur, Covenants, Conditions, and Restrictions § 211.

not so apply and there is nothing about the factual background or any of the lots within the subdivision to suggest otherwise.

6. SAME—GARDENS—SPLITTING LOTS—MINIMUM AREA RESTRICTIONS —STREET FRONTAGE.

Fact that other lot owners in subdivision had not split their lots as defendants desired to do and had used a portion thereof for gardens as contemplated in advertisements *held*, not to constitute evidence that defendants would violate restrictions by doing so, even if such evidence were admissible, where it it not clear what size the gardens were to be and defendants observed all applicable setback lines, minimum area and street frontage restrictions.

7. SAME—SETBACK LINES—BACK LINES.

Fact that set of restrictions applicable to subdivision contains no setback lines as to back line of lots but only as to front and side lines would not preclude lot owners from dividing lots and building at rear thereof as long as all applicable restrictions are observed.

8. SAME—RESIDENCE—PLOT—MINIMUM AREA RESTRICTIONS—STREET FRONTAGE.

Provision for minimum area and street frontage restrictions in set of restrictions applicable to entire subdivision *held*, not repugnant to preceding restriction that "no building shall be erected upon any lot or plot in this subdivision other than a single-family residence," the area and street frontage restrictions merely serving to define the term "plot."

9. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PARTIES—COSTS.

Whether or not nonprofit association might properly withdraw from case on appeal and thereby escape liability for costs is not determined, where it is deemed that the question is not before the Supreme Court in proper form.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted January 8, 1954. (Docket No. 37, Calendar No. 46,029.) Decided February 18, 1954.

Bill by Schoolcraft Civic Association, a nonprofit corporation, and 21 parties interested by reason of ownership of property in Sunrest Garden Homes Subdivision, against Norman and Jane DiLoreto and George and Dorothy J. Rich, to enjoin construction

claimed contrary to plot restrictions. Decree for plaintiffs. Defendants appeal. Reversed and bill dismissed.

*Walter M. Nelson,* for plaintiffs.

*B. Ward Smith* and *Clark, Klein, Brucker & Waples,* for defendants.

DETHMERS, J.   Plaintiffs seek to enjoin alleged violations of recorded building restrictions applicable to Sunrest Garden Homes Subdivision in Wayne county.   From decree for plaintiffs defendants appeal.

Pertinent provisions of the restrictions are:

"2. No building shall be erected upon any lot or plot in this subdivision other than a single-family residence and accessory building customarily incident to the use of such single-family residences appurtenant thereto.

"3. All residences erected in the subdivision shall be set back not less than 25 feet from the front street line.

"4. Residences erected on lots 22 through 40, 71 through 89 and 120 through 138 shall be built not less than 10 feet from the south lot or plot line and not less than 6 feet from the north lot or plot line of said lots or of any plots including said lots.

"5. Residences built on lots 3 through 21, 52 through 70 and 101 through 119 shall be built not less than 6 feet from the south lot or plot line and not less than 10 feet from the north lot or plot line of said lots or of any plots including said lots.

"6. Residences built on lots 1, 2, 41 through 51, 90 through 100, 139 through 1943 (*sic*) shall be built not less than 10 feet from the west lot or plot line and not less than 6 feet from the east lot or plot line of said lots or of any plots including said lots.

"A. Any reference to lots or plots shall include any one or more lots or plots grouped together and used for the occupancy of one family. * * *

"9. No residence shall be erected costing less than $3,000. * * *

"13. No residence shall be built except upon a plot having an area of not less than 6,000 square feet and having a frontage upon a street either now existing in the recorded plat or which may hereafter be established.

"In no event shall a residence be built upon a plot or lot having a width of less than 50 feet."

Involved are lots 131, 132, 134 and 135. They are approximately 235 feet long, east and west, 50 feet in width, and bounded at both ends by streets. One house occupies the east half of lots 131 and 132, and another the east half of lots 134 and 135. Defendants Rich have acquired and commenced building a house on the west half of lots 131 and 132, and defendants DiLoreto have done the same as relates to the west half of lot 135 and of the north half of lot 134. Plaintiffs contend that such division of the lots and building of houses on the west half thereof after houses are already located on the east half constitute violations of the above restrictions.

Defendants say that such division of lots and construction of houses would comply in every respect with the restrictions, particularizing as follows: the residences would be single family as required in paragraph 2 of the restrictions; they would be set back from the front street line not less than 25 feet as provided in paragraph 3; the applicable provisions of paragraphs 4, 5 and 6, relating to set back from sidelines, covering their specific lots, would be observed; the minimum cost provisions of paragraph 9 would be exceeded; the minimum plot area of 6,000 square feet, specified in paragraph 13, is exceeded by defendants DiLoreto with 8,790.75 square

feet, and by defendants Rich with 11,760 square feet, and both exceed that paragraph's minimum requirement of 50 feet width or street frontage, DiLoretos having 75 feet and the Richs 100 feet width or street frontage, both with a depth of approximately 117 feet back from the street. Defendants stress the complete absence of any express provision in the restrictions prohibiting the splitting of lots and building thereon in the manner begun by them.

Plaintiffs insist that defendants' projected course of action would violate the restrictions of paragraph 2 limiting the building on any lot or plot to "a single-family residence and accessory building." In that connection they urge that the word "plot" means 2 or more entire lots. Defendants counter with the contention that a plot may consist of any part of a lot or lots having the minimum area and frontage required in paragraph 13 and that, accordingly, they are the owners of plots and that their building thereon does not violate paragraph 2.

The first question discussed in the briefs is whether there is such ambiguity in the restrictions with respect to the meaning of the word "plot" as to warrant the court's seeking the meaning by reference to extraneous matters, such as the sales agents' advertisements used to sell lots in the subdivision and the conduct of interested parties pursuant thereto. We think no such ambiguity exists. It is apparent from a reading of all the restrictions that there was no intention to freeze lot lines but that, rather, plots and plot lines might be created. The limitations of paragraph 13 to a minimum of 50 feet street frontage and area of 6,000 square feet fix the minimum for such plots. Inasmuch as every lot in the plat exceeds such area, most of them being twice that large, it is evident that the word "plot" was not used to mean something necessarily larger than a lot or a combination of whole lots, as plaintiffs contend. On

the contrary, it is clear from the language of the restrictions as a whole that a plot was intended to be any portion of the subdivision, whether made up of several lots or of parts of a lot or lots, which meets the minimum requirements of paragraph 13. To conclude otherwise is to render the provisions of paragraph 13 meaningless. Recourse to dictionary definitions or decisions of other courts concerning the meaning of the term "plots", generally, serves no useful purpose when the meaning is made abundantly clear by the terms of the restrictions themselves.

We see nothing in the words "or of any plots, including said lots" at the conclusion of paragraphs 4, 5 and 6, respectively, that discloses an intent that "plots" must be made up of whole lots and not of parts or combinations of parts thereof. The quoted words merely indicate that certain north and south sideline restrictions apply to plots made up from land contained in the specific lots to which those words refer back, and that certain east and west sideline restrictions relate to plots made up from land in certain other specific lots referred to by those words. Paragraph 6A does not necessitate adoption of plaintiffs' definition of "plots".

There is no merit to plaintiffs' contention that the area requirements of paragraph 13 apply only to the short lots numbered 3 to 21, inclusive, in lieu of, or to make up for an alleged lack of, provisions for setback from sidelines as provided in the case of all the other lots. Paragraph 5 contains precisely such sideline restrictions applicable to those short lots.

Plaintiffs urge that the location of the area and frontage restrictions way back in paragraph 13, removed from the earlier restrictions contained in paragraphs 2 to 10, inclusive, suggest that they were but a part of a miscellaneous group not applicable to the entire plat and that if they had been

intended to apply to all the lots they would have been found somewhere before paragraph 7. The difficulty is that plaintiffs fail to define what constitutes the miscellaneous group, and they are able to point to no other restrictions in any such group which are not applicable to the entire plat; and they expressly state in the brief that the 50-foot minimum frontage requirement of paragraph 13 does apply to the entire subdivision. By what process of reasoning it may be concluded that the area requirement does not apply, equally with the frontage requirement, to the entire plat is not made to appear. There is nothing about the factual background or the physical situation of the subdivision or any of the lots within it, or any of the provisions of the restrictions, to suggest that paragraph 13 or any part of it shall apply to anything less than the entire subdivision.

If it be assumed, *arguendo,* that there is an ambiguity, in the respect claimed, and that the meaning and intent of the subdivider and his restrictions are to be ascertained by reference to the sales agents' advertisements, plaintiffs' sole reliance in that regard is placed on the use therein of the language "garden home sites", "Sunrest Gardens", et cetera, all of which, plaintiffs contend, establish that it was the intent that the lots or plots were to be used for homes and gardens. Plaintiffs reason that defendants' splitting of lots and building as planned would destroy the garden character of the subdivision. Nothing in the restrictions, recorded plat or advertisements, indicates the size or character of contemplated gardens. The most that can be said in that respect is that paragraph 13 sets the minimum for plots at 6,000 square feet. Can it be said that defendants' plots, 117 feet deep, with an area of over 8,000 feet and over 11,000 feet, respectively, are not ample to allow for gardens in addition to their houses? The fact, if it be a fact, that other home

owners in the subdivision have gardens and that none of them has split lots as desired by defendants, does not establish an intent on the part of the sub-dividers contrary to the clearly-expressed provisions of paragraph 13 or require an interpretation which does violence thereto. It is not shown that defendants' actions, if permitted, will result in a type of construction that runs counter to the ranch type now existent in the subdivision or that another type would be violative of the restrictions or of the plaintiff's rights.

From the fact that the restrictions provide for a specified building set back from the street and from the sidelines of lots and plots but make no provision of that character concerning the back line of any lot or plot, it does not necessarily follow that lots may not be divided as defendants have done. Many lots in the subdivision front on but one street and back against the rear end of lots facing another street. Yet there are no provisions with relation to such lots, restricting construction for a certain distance from the back lines. The situation in regard to those lots is identical with that of the lots here in question after splitting them in the manner done by defendants. The only conclusion to be drawn in this connection is that the subdivider was concerned about maintaining open spaces between the sides of houses as viewed from the street, but did not intend to prevent construction immediately up to the back line of a lot or plot.

There is no repugnancy between the provisions of paragraph 13 and those of earlier paragraphs of the restrictions, necessitating that paragraph 13 be disregarded. Its provisions do not defeat those of paragraph 2 inasmuch as the latter do not limit the erecting of a single-family residence to a lot, but, rather, to a lot or plot, paragraph 13 merely serving to define a "plot" for that purpose. On the other

hand, since every lot in the subdivision has a larger area and as great a frontage as the minimums specified in paragraph 13, a holding that a plot must contain 2 or more whole lots, and that no lot may be divided, would serve to render the provisions of paragraph 13 utterly pointless, and would run counter to the idea permeating the whole of the restrictions that the lot lines are not to be frozen into the subdivision structure but may be replaced by plot lines, as indicated particularly in paragraphs 4, 5 and 6, which specifically refer thereto.

The decree of the lower court is reversed, the injunction therein provided is dissolved, and plaintiffs' bill of complaint dismissed.

The plaintiff Schoolcraft Civic Association has filed a motion, supported by affidavit, to be dropped as a party plaintiff-appellee, alleging that it never authorized plaintiffs' attorney to bring this action in its behalf and that it has adopted a resolution withdrawing from the case. Plaintiffs' counsel has filed an affidavit in opposition, to the effect that he was duly retained by the association after a majority vote of its directors and members for that purpose and that the subsequent attempt to withdraw from the case is not in accord with the will of a majority of its members. The question is important solely as relates to which plaintiffs shall be liable for costs. We do not consider the matter before us in proper form for determination as between them. We, therefore, decline to pass on it, leaving it open for appropriate proceedings.

Reversed, with costs to defendants.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred.