ESTATE OF W. Scott MCINTYRE, by Victoria Ann McIntyre Baron as personal representative, and Victoria Ann McIntyre Baron, in her individual capacity, Plaintiffs–Appellants,

v.

LIONSRIDGE # 4 HOMEOWNER'S ASSOCIATION, n/k/a Aspen Grove Homeowner's Association; Nancy M. Peterson; Hidden Valley Enterprises Ltd., a Bahamas corporation; Thomas J. Hughes; Diane L. Hughes; Robert Snowden Smith; Donald P. Remey; Nancy W. Remey; Judith A. Kuller; Harold Kuller; Richard J. Karle; Tonnie C. Karle; and Orrison Family Guardianship, Defendants–Appellees.

No. 03CA2382.

Colorado Court of Appeals, Div. III.

May 5, 2005.

Certiorari Denied Nov. 28, 2005.

McGloin Davenport Severson & Snow, Michael M. McGloin, Eric A. Beltzer, Krista L.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.

Tushar, Denver, Colorado, for Plaintiffs–Appellants.

Porterfield & Associates, LLC, Wendell B. Porterfield, Jr., Vail, Colorado, for Defendants–Appellees.

CASEBOLT, J.

In this declaratory judgment action involving the interpretation of restrictive covenants on real property, plaintiffs, the Estate of W. Scott McIntyre and Victoria Ann McIntyre Baron, appeal the judgment entered in favor of defendants, Lionsridge # 4 Homeowner's Association, Nancy M. Peterson, Hidden Valley Enterprises Ltd., Thomas J. Hughes, Diane L. Hughes, Robert Snowden Smith, Donald P. Remey, Nancy W. Remey, Judith A. Kuller, Harold Kuller, Richard J. Karle, Tonnie C. Karle, and Orrison Family Guardianship, in which the trial court construed the applicable covenants to preclude further subdivision of plaintiffs' lot. We affirm.

Plaintiffs are the owners of Lot 11 in a residential housing development known as Lion's Ridge, which is subject to restrictive and protective covenants. Defendants include the homeowner's association and individual lot owners in the development.

The applicable Declaration of Protective Covenants has had, as relevant here, three versions. The first is the 1980 Declaration, the second is the 1985 Amended Declaration, and the third is the 1999 Amendment.

The 1980 version contained an express restriction against subdividing plaintiffs' lot. The 1985 version did not contain the express restriction. While the 1985 version did not contain any express language either permitting or prohibiting subdivision of any lot, the 1999 Amendment expressly provided that no subdivision of any lot may occur.

Plaintiffs filed this action seeking a declaration that the 1985 version did not prohibit subdivision of the lot and that the 1999 Amendment was invalid. After a bench trial, the trial court concluded that the 1985 version restricted subdivision of plaintiffs' lot and that the 1999 Amendment was valid because it did not take away any preexisting right to subdivide. This appeal followed.

■ Plaintiffs contend the trial court erred in determining that the 1985 Amended Declaration clearly and unambiguously prohibited subdivision of the lot and in concluding that the 1999 Amendment was valid. Specifically, plaintiffs contend that, because the 1985 version deleted the explicit restriction against subdivision found in the 1980 Declaration, subdivision was no longer prohibited. We disagree.

■ Construction of a covenant is a question of law that requires de novo review. *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.,* 21 P.3d 860 (Colo.2001).

■ When interpreting a restrictive covenant, courts must "follow the dictates of plain English." *Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n,* 773 P.2d 1046, 1048 (Colo.1989)(quoting *D.C. Burns Realty & Trust Co. v. Mack,* 168 Colo. 1, 4, 450 P.2d 75, 76 (1969)). Courts will enforce as written a covenant that is clear on its face. *Rossman v. Seasons at Tiara Rado Assocs.,* 943 P.2d 34 (Colo.App.1996).

Here, the 1980 Declaration defined "lot" as "[a] Lot within Lion's Ridge Subdivision Filing No. 4 including the appurtenant interest thereto, if any, in and to the Road." It defined "single unit residential lot" as "[a] Lot which can be used solely for residential purposes and upon which not more than one building, containing not more than one dwelling unit, and containing not more than one garage may be constructed." It defined "single owner duplex unit residential lot" as:

A Lot which can be used solely for residential purposes and upon which not more than one building containing not more than two dwelling units, and not more than one garage for each dwelling unit, may be constructed, provided that such Lot and dwelling units thereon may not be further subdivided and the dwelling units thereon may not be separately owned.

Plaintiffs' lot was originally a single owner duplex unit residential lot.

The 1985 Amended Declaration deleted the distinction between single owner duplex residential lots and single unit residential lots. It designated all lots as "residential lots," and defined that term as:

A Lot which can be used for residential purposes and upon which Lot not more than one building, containing not more than one dwelling unit and not more than one employee unit ... and containing not more than one garage for each unit, may be constructed.

We are not persuaded by plaintiffs' contentions that the elimination of the explicit restriction on subdivision in the 1985 Amended Declaration means the restriction on subdividing was altogether removed and that the "one building per lot" clause restricts only the number of buildings on a lot, not the number of lots in the development. On the contrary, in light of the definition of "lot" and the removal of single owner duplex units from the declaration, the express restriction on subdivision can be fairly construed to be superfluous and therefore unnecessary.

It is clear that the word "lot," as used in the 1985 Amended Declaration, refers to the units of property within the subdivision originally conveyed by the developer. "Lot" is defined as "[a] Lot within Lion's Ridge Subdivision Filing No. 4," which as originally platted consisted of seventeen lots. Thus, it is also clear that the paragraph permitting construction of not more than one building containing not more than one dwelling unit upon a residential lot refers to a lot as any of the original units of land in the subdivision as originally platted by the developer.

Other jurisdictions, considering similar language, have concluded that no further subdivision of a lot was permitted. *See Belle Terre Ass'n v. Brosch,* 216 So.2d 462 (Fla. Dist.Ct.App.1968); *Belleview Constr. Co. v. Rugby Hall Cmty. Ass'n,* 321 Md. 152, 582 A.2d 493 (1990); *Cadbury v. Bradshaw,* 43 Or.App. 33, 602 P.2d 289 (1979).

In *Belleview Construction Co., supra,* the restriction provided that "only one single family dwelling for private residence purposes shall be erected on each lot." The court concluded that "each lot" meant each lot as conveyed by the developer, and not each lot that thereafter might be created by any resubdivision. The court reasoned that "it almost defies common sense to suggest that although 'lot' obviously means a lot as conveyed by the developer virtually every-

where it is used in the deed of restrictions, it should somehow be afforded a different meaning ... when it is used in this restriction [allowing only one single family dwelling on each lot]." *Belleview Constr. Co. v. Rugby Hall Cmty. Ass'n, supra,* 321 Md. at 159, 582 A.2d at 496.

In *Belle Terre Ass'n, supra,* the restriction provided that "only one dwelling house ... shall be erected on any single lot or plot and each dwelling house shall be for one family only." The court concluded that "[the restrictions] mean precisely what they say: [t]here will be only one dwelling house on Lot 90, as that lot is shown on the plat" and thus held that the defendants were not entitled to divide their lot into two lots and construct two houses. *Belle Terre Ass'n v. Brosch, supra,* 216 So.2d at 463.

Finally, in *Cadbury, supra,* the restriction provided, in pertinent part:

1. All parcels in the tract shall be known, used and described as residential parcels.

2. No structure shall be erected, altered, placed or permitted to remain on any parcel other than one detached single-family dwelling or one semi-detached single-family dwelling, not to exceed two stories in height, and a private garage for not more than three cars, and other outbuildings incidental to residential use of the parcel, including servants quarters.

*Cadbury v. Bradshaw, supra,* 43 Or.App. at 35–36, 602 P.2d at 290.

The court rejected the contention that construction was permissible on resubdivided parcels and concluded that "it is clear ... that the word 'parcel,' as used in the restrictions, refers to the units of property which are shown on the map and which were originally conveyed by the common grantor." It further concluded, "The meaning of the word 'parcel' being clear, the meaning of paragraph 2 of the restrictions is also clear. The paragraph permits only one dwelling unit to be built or maintained on any 'parcel,' i.e., on any of the original units of land shown on the map." *Cadbury v. Bradshaw, supra,* 43 Or. App. at 36–37, 602 P.2d at 290–91.

Here, as in *Belleview Construction Co., supra*, it would defy common sense to suggest that although "lot" means "[a] Lot within Lion's Ridge Subdivision Filing No. 4," that is, a lot as platted and conveyed by the developer, it should be afforded a different meaning when used in relation to the restriction regarding one dwelling unit per lot.

Moreover, when plaintiffs' predecessor in interest bought Lot 11, the purchase contract contained an addendum concerning another lot, which provided:

> Purchaser agrees to support Seller's efforts in subdividing Lot 8, Lionsridge Filing 4. This includes Seller's efforts to receive approval from the Town of Vail and approval from the balance of the property owners in Lionsridge, Filing 4 for said subdivision. In addition, Purchaser agrees to support and approve an amendment to the protective covenants to allow for the subdivision of Lot 8 into no more than three lots.

This addendum, while not dispositive, furnishes additional evidence that the parties' understanding of the declaration, even as it existed in 1985, was that further subdivision of the existing lots was prohibited unless approved by the required number of owners in the subdivision.

We are not persuaded by the decisions of other courts that reach a different result. In *Turnley v. Garfinkel*, 211 Tenn. 125, 362 S.W.2d 921 (1962), the court approved resubdivision of a lot and construction of a dwelling on each of the resulting lots. However, it did so by referring to provisions included by the developer in the original plat, which specifically contemplated resubdivision of the lots when certain conditions were met.

In *J.P. Building Enterprises, Inc. v. Timberwood Development Co.*, 718 S.W.2d 841, 842 (Tex.App.1986), the restrictive covenant provided, "All tracts shall be used solely for residential purposes. No building other than a single-family residence containing not less than 1600 square feet ... shall be erected or constructed ...." The court concluded that resubdivision would not violate the restriction so long as any building built on the resubdivided land was used "solely for residential purposes" and was "a single family residence containing not less than 1600 square feet." However, unlike the facts in the case before us, the inclusion of a required minimum area for each residence connotes only a building restriction, not a restriction on the number of lots. *See Belleview Constr. Co., supra; see also Schoolcraft Civic Ass'n v. Diloreto*, 339 Mich. 121, 62 N.W.2d 657 (1954); *Ingle v. Stubbins*, 240 N.C. 382, 82 S.E.2d 388 (1954); *Callaham v. Arenson*, 239 N.C. 619, 80 S.E.2d 619 (1954)(stated restrictions on lot size smaller than the size of the platted lots justified a finding that resubdivision was contemplated).

Accordingly, we conclude that the 1985 Amended Declaration prohibited further subdivision of plaintiffs' lot.

In light of our disposition, we need not address whether the 1999 Amendment is valid.

The judgment is affirmed.

Judge DAILEY and Judge PICCONE concur.