## PAGOSA LAKES PROPERTY OWNERS ASSOCIATION, INC., a Colorado non-profit corporation, Plaintiff–Appellee and Cross–Appellant,

v.

## Larry K. CAYWOOD and Carol M. Caywood, Defendants–Appellants and Cross–Appellees.

### No. 97CA0115

Colorado Court of Appeals, Division IV.

Aug. 6, 1998.

Rehearing Denied Sept. 3, 1998.

Certiorari Denied April 12, 1999.

---

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1997.

Gerald Sawatzky, Pagosa Springs, for Plaintiff–Appellee and Cross–Appellant.

Hal B. Warren, LLC, Hal B. Warren, Evergreen, for Defendants–Appellants and Cross–Appellees.

Shand, Newbold & Chapman, P.C., Keith Newbold, Durango, Amicus Curiae for Fairfield Communities, Inc.

Orten & Hindman, P.C., Jerry C.M. Orten, Thomas J. Hindman, Laura J. Gibson, Denver, Amicus Curiae for Community Associations Institute, Inc.

Opinion by Judge ROY.

Defendants, Larry K. and Carol M. Caywood (owners), appeal the mandatory injunction entered by the trial court in favor of plaintiff, Pagosa Lakes Property Owners Association, Inc. (association), ordering owners to remove their manufactured home from the subdivision. The association cross-appeals the denial of its motion for attorney fees. We affirm the injunction, reverse the order concerning attorney fees, and remand with directions to award reasonable attorney fees incurred by the association in the trial court and on appeal pursuant to §38–33.3–123, C.R.S.1997.

The pivotal issue on appeal is whether the association can lawfully adopt and enforce a regulation requiring any residence built or installed by owners on their lots to comply with the Uniform Building Code (UBC). The resolution of the issue turns, in large part, on application of the Colorado Common Interest Ownership Act, §38–33.3–101, et seq., C.R.S.1997(Act). The Act is the Colorado version of the Uniform Common Interest Ownership Act (1994), 7 *Uniform Laws Annot.* 471 (Master Ed.1997).

Owners own lots in a subdivision in Archuleta County. The lots are subject to restrictive covenants which are set forth in the recorded Declaration of Restrictions (Declaration), which limits the use of the lots in several respects, including lot size, uses, setbacks, minimum living areas in residential structures, height of structures, and maximum lot coverage. The Declaration also created the association, which is declared to have, *inter alia,* all powers that belong to it by operation of law, and the Environmental Control Committee (ECC), which is the body responsible for approving all proposed construction within the subdivision. The Declaration is dated February 25, 1972, and was recorded shortly thereafter.

On March 9, 1995, acting pursuant to the Act, the board of directors of the association adopted Rules and Regulations Concerning Architecture, Construction and Environment (regulations). The regulations, which were not recorded, were drafted by the ECC and, *inter alia,* required that all homes built within the subdivision comply with the current version of the UBC.

Owners applied for, and received, a county permit to build a home on their lots located in the subdivision. Owners then began the installation of a double-wide manufactured home which, while it may have complied with other building codes or standards, did not comply with the UBC. Upon learning that owners were installing a non-complying manufactured home, the association immediately issued a stop-work order. Owners ignored the stop-work order and completed installation. The association then commenced this action, requesting a mandatory injunction ordering owners to remove the home.

After a trial to the court, the court granted the mandatory injunction ordering owners to remove the residence, but denied the association's motion for attorney fees. This appeal followed.

I.

The trial court found that the ECC was the entity that adopted the regulations, and the owners argue that the ECC did not have the authority to do so. It is apparent from the partial record before us, and owners' subsequent representation in their brief, that the regulations were adopted by the board of directors of the association pursuant to what it considered its authority under §§38–33.3–302(1)(a) and 38–33.3–117(1)(i), C.R.S.1997. Hence, the trial court's finding that the ECC enacted the regulations was clearly erroneous. *See Fasing v. LaFond,* 944 P.2d 608 (Colo.App.1997). Nevertheless, inasmuch as the regulations were duly enacted, that error is without significance.

II.

Owners argue that the trial court erred in finding that the association could enforce the

regulations without first recording them with the county clerk and recorder. In a related argument, owners also contend that the trial court erred in relying upon the Act to validate the ECC's enforcement of the regulations. We disagree with both arguments.

The Act was enacted upon a legislative finding that:

[I]t is in the best interests of the state and its citizens to establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities....

Section 38–33.3–102(1)(a), C.R.S.1997.

And, although the Act was adopted after the creation of the association, portions of it apply to the association by virtue of §38–33.3–117(1)(i). One of those applicable parts permits the association to "adopt and amend bylaws and rules and regulations." Section 38–33.3–302(1)(a).

The Declaration created the association "to further and promote the community welfare of property owners in the Subdivision" and stated that it "shall have ... all other powers that belong to it by operation of law...."

The Declaration also gave the ECC both general and specific powers. With respect to general powers of the ECC, the Declaration states:

C. There shall be submitted to the [ECC] a building application ... with two ... complete sets of plans and specifications for any and all proposed improvements, the erection or alteration of which is desired, and no structures or improvements of any kind shall be erected, altered, placed or maintained upon any lot unless and until the final plans, elevations, and specifications therefor have received such written approval as herein provided.

. . . .

E. The [ECC] shall have the right to disapprove any plans, specifications, or details submitted to it in the event the same are not in accordance with all of the provisions of these Restrictions; if the design or color scheme of the proposed building or other structure is not in harmony with the general surroundings of such lot or with the adjacent buildings or structures; if the plans and specifications submitted are incomplete; or in the event the [ECC] deems the plans, specifications or details, or any part thereof, to be contrary to the interests, welfare or rights of all or any part of the real property subject hereto, or the owners thereof. The decisions of the [ECC] shall be final.

. . . .

G. The [ECC] shall have the authority to set up regulations as to the height and size requirements for all other types of out-buildings and structures, including fences, walls, copings, etc.

Although the ECC was created by the Declaration as an entity separate from the association, the Declaration provides for a transfer of the appointive and removal power of ECC members to the association. This transfer has apparently occurred, as the trial court found, with record support, that the ECC is a subordinate entity to the association.

### A.

■ Owners contend that the trial court erred in finding that the subdivision is a "common interest community" to which the Act is applicable. We disagree.

Interpretation of statutes is a question of law, and a reviewing court need not defer to a trial court's interpretation. *Colorado Division of Employment & Training v. Parkview Episcopal Hospital,* 725 P.2d 787 (Colo.1986). Similarly, the trial court's conclusions based on construction of documents are not binding upon us on review. *See Rossman v. Seasons at Tiara Rado Associates,* 943 P.2d 34 (Colo. App.1996).

"Common interest communities" are defined by §38–33.3–103(8), C.R.S.1997, as follows:

real estate described in a declaration with respect to which a person, by virtue of such person's ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance, or improve-

ment of other real estate described in a declaration.

Owners argue that, since property owners within the subdivision are not required, by virtue of their ownership of subdivision property, to pay for real estate taxes, insurance premiums, or improvement of other subdivision real estate, the subdivision is not a common interest community.

The Declaration provides, however, that each homeowner, by virtue of ownership, is obligated to pay to the association fees which:

> shall be used exclusively for ... the maintenance of the waterways, parks and other recreational facilities.

Thus, the funds collected by the association are to be used, at least in part, for the maintenance of certain common elements.

In addition, because owners have failed to provide a transcript of the trial on appeal, we cannot address their contention that there was no evidence presented at trial establishing that property owners were presently obligated to pay assessments. *See Hock v. New York Life Insurance Co.,* 876 P.2d 1242 (Colo.1994) (when appellant has failed to provide a complete record, appellate court will presume the trial court's findings and conclusions have evidentiary support).

Therefore, we perceive no error in the trial court's conclusion that the subdivision is a "common interest community" subject to the provisions of the Act.

### B.

■ Owners maintain that, even if the Act is applicable, the association exceeded its authority because the General Assembly could not have intended to give unit owners' associations the power to impose unrecorded covenants limiting or regulating the use of real property. Specifically, owners contend that to allow such associations to adopt and enforce unrecorded restrictions on the use of property would wreak havoc on titles to property. Again, we disagree.

Here, an owner of property in the subdivision is on constructive notice that his or her property is subject to unrecorded restrictions and regulations by virtue of the recording of the Declaration, which creates and grants broad powers to the association and ECC. *See* §38–35–109(1), C.R.S.1997. In addition, a person is presumed to know the law and the publication of the statutes is sufficient to give notice. *Dikeman v. Charnes,* 739 P.2d 870 (Colo.App.1987).

We note further that the Act, while granting unit owners' associations broad discretionary powers, mandates that such associations are not permitted to adopt regulations which contradict recorded restrictions. *See* §38–33.3–117(2), C.R.S.1997.

In addition, while a unit owners' association is not converted into a governmental entity by the Act, *Woodmoor Improvement Ass'n v. Brenner,* 919 P.2d 928 (Colo.App. 1996), we note that counties and municipalities routinely adopt ordinances which restrict or regulate the use of property in the same manner as the requirement at issue here, without the necessity of recording in order to put owners of real estate on notice.

While constructive notice was, in our view, sufficient, owners were on actual notice of the regulations and their applicability. The Act was adopted in 1991, effective July 1, 1992. *See* Colo. Sess. Laws 1991, ch. 283 at 1701. The association adopted its regulations March 9, 1995, and, on March 15, 1996, a copy was provided to owners prior to their application for a building permit, which application was filed April 16, 1996.

Hence, we reject the argument that the requirement that structures comply with the UBC can be equated to a restrictive covenant, land use restriction, or regulation requiring separate recordation.

### III.

■ Owners also contend that they are entitled to judgment under the theories of promissory and equitable estoppel. However, because it is undisputed that owners did not raise these defenses in their answer or at trial, we consider them to have been waived. *See* C.R.C.P. 8(c) (promissory and equitable estoppel are affirmative defenses, and must be pled, if at all, in the answer); *Leyden v. Citicorp Industrial Bank,* 782 P.2d 6 (Colo.

1989) (failure to plead estoppel in the answer results in a waiver of the defense); *Trujillo v. Farmers Insurance Exchange,* 862 P.2d 962 (Colo.App.1993) (same).

■ We note that owners did raise promissory or equitable estoppel in their motion to amend the judgment pursuant to C.R.C.P. 59. Owners there alleged that the defenses had been tried without objection and that, thus, the pleading should be amended to include promissory and equitable estoppel as defenses. We are not persuaded.

The C.R.C.P. 59 motion was denied by virtue of the failure of the trial court to rule within 60 days. *See* C.R.C.P. 59(j). Therefore, we do not have the benefit of the trial court's review of the issue. In addition, the parties failed to provide us with a transcript of the trial so that we could independently determine whether the issue had been tried without objection. *See Hock v. New York Life Insurance Co., supra.*

### IV.

In the cross-appeal, the association contends the trial court erred in denying it attorney fees. We agree.

### A.

■ Initially, we reject owners' contention that the association is not entitled to attorney fees because it did not specify that the Act was a basis for the award until after the final judgment had entered.

The association requested attorney fees in its complaint without specifying the basis for the award. The trial court concluded that the Act applied to the dispute, but denied attorney fees based on its conclusion that owners' position in the litigation was not frivolous and did not lack substantial justification, presumably considering §13–17–102, C.R.S.1997.

The association then filed a motion pursuant to C.R.C.P. 59, seeking a modification of the judgment to include an award of attorney fees pursuant to §38–33.3–123, C.R.S.1997, which mandates an award to the successful party. The trial court did not rule on the motion, and it was deemed denied by virtue of C.R.C.P. 59(j).

Contrary to owners' assertion, we conclude that the association timely raised the attorney fees issue.

First, under notice pleading, the association sufficiently raised the attorney fees issue in its complaint.

■ Second, even if it had not raised the attorney fees issue prior to judgment, a request for attorney fees should not be denied solely because it was first presented after judgment. *Bakehouse & Associates, Inc. v. Wilkins,* 689 P.2d 1166 (Colo.App.1984). Indeed, when an award of attorney fees is authorized by statute and based on the achievement of a successful result, and when the fees are for services rendered in connection with the litigation, a determination of the propriety of the award need not be made until after the litigation is complete, and the result known. *Sperry v. Bolas,* 786 P.2d 517 (Colo.App.1989).

### B.

■ We also agree with the association that §38–33.3–123(1) requires an award of attorney fees here.

Section 38–33.3–123(1) provides:

For each claim, including but not limited to, counterclaims, cross-claims, and third party claims, in any legal proceeding to enforce the provisions of this article or of the declaration, bylaws, articles or rules and regulations, *the court shall award to the party prevailing on such claim the prevailing party's reasonable collection costs and attorney fees and costs incurred in asserting or defending the claim.* (emphasis added)

In our view, the plain meaning of this language mandates that the association, as the prevailing party, must be awarded reasonable attorney fees and costs incurred in prosecuting this claim before the trial court and on appeal.

Because of our resolution of this issue, we need not reach the association's contention that it was entitled to attorney fees pursuant to the Building Agreement.

Accordingly, the order of the trial court denying the association attorney fees is reversed and the cause is remanded for award of reasonable attorney fees incurred in the trial court and on appeal. The injunction entered by the trial court is otherwise affirmed.

Judge RULAND and Judge CASEBOLT concur.