James Rowe Turner, Ronald G. Vaughn, Ann F. Vaughn, William J. Fiorentino, and Judith Fiorentino appeal from a judgment in favor of Wayne B. Clutts and Marlis B. Clutts declaring that the Cluttses' property is not subject to certain restrictive covenants. We reverse and remand.
The pertinent facts were stipulated: On May 12, 1979, J.T.S. Lands, Inc., sold by auction lots 1 through 13 of the Schrimsher Estates subdivision ("the subdivision"). Ben Porter purchased lots 6 and 8 (each consisting of 3.31 acres) for $8,250 and $7,700 respectively; J.D. McRae purchased lot 7 (consisting of 3.31 acres) for $7,700; James Turner purchased lot 10 (consisting of 33.40 acres) for $66,500; William Fiorentino purchased lot 11 (consisting of 32.15 acres) for $70,500; and Ronald Vaughn purchased lots 3 (consisting of 3.41 acres) and 12 (consisting of approximately 26 acres) for $19,000 and $47,300 respectively. Porter and McRae subsequently assigned their contract rights to lots 6, 7, and 8 to D.L. Putman. Prior to the auction, J.T.S. Lands, Inc., was told that lots 6, 7, and 8 had failed "percolation" tests and could not be used for residential purposes because they were unsuitable for the installation of septic tanks. The fact that the lots had failed the "percolation" tests was announced at the auction. In addition, copies of a plat depicting lots 6, 7, and 8 as part of the subdivision were made available to the attending public, as well as copies of restrictive covenants that were to apply to *Page 93 
those lots. There was no announcement at the auction that lots 6, 7, and 8 were not to remain as part of the subdivision. Following the auction, the plat depicting lots 6, 7, and 8 as part of the subdivision was submitted to the City of Madison Planning Commission for its approval. The Commission refused to approve the plat unless lots 6, 7, and 8 were excluded from the subdivision. The lots were excluded, the Commission gave its approval, and on June 26, 1979, a plat was recorded in the probate court in Madison County depicting lots 6, 7, and 8 with hatches and the notation: "Cross-Hatched Area Not Part of Subdivision Except Easements." The numbers "6," "7," and "8," and the dimensions of the lots were, however, clearly visible on the plat. On July 3, 1979, J.T.S. Lands, Inc., recorded in the probate court a document entitled "Restrictive Covenants." That document, in part, reads as follows:
 "PART A. WHEREAS, J.T.S. LANDS, INC., an Alabama corporation, is the owner of the property known as SCHRIMSHER ESTATES, as recorded in Plat Book 10, page 51, in the office of the Judge of Probate, Madison County, Alabama; and
 "WHEREAS, it is desired by the owner of said Schrimsher Estates to fix and establish certain restrictions as to the use and enjoyment of all the lots thereby protecting all persons, firms or corporations that may hereafter become owners of said lots.
 "NOW, THEREFORE, the said J.T.S. Lands, Inc., does by these presents establish and fix protective covenants and restrictions as to the future use of said lots, and does grant to the public and to the future owners of any lots, as part of their enjoyment of the said lots, the right to enforce such restrictions and rights as follows:
"PART B. AREA OF APPLICATION
 "1. These restrictions shall apply to lots no. 1, 2, 3, 4, 5, 6, 7, 8 and 9.
 "2. All lots shall be used for single family dwellings.
". . . .
 "9. TERMS: These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five (25) years from the date of these covenants' recording, after which time said covenants shall automatically be extended for successive periods of ten years unless an instrument signed by a majority of the then owners of the lots has been recorded agreeing to change said covenants in whole or in part."
On July 11, 1979, J.T.S. Lands, Inc., conveyed the lots that had been depicted on the plat as lots 6, 7, and 8 to D.L. Putman. The lots are identified in the deed by a metes and bounds description, but they can be identified in the recorded plat by reference to that description. Thereafter, the lots were conveyed to Land Dealers, Inc., which later conveyed them to the Cluttses.[1]
The present action for a declaratory judgment was filed by the Cluttses to determine whether their property was subject to the restrictive covenants.[2] The trial court did not state its reasons for declaring the covenants inapplicable to the Cluttses' property.
The appellants contend that even though J.T.S. Lands, Inc., excluded the Cluttses' lots from the subdivision, it nonetheless intended to, and did, impose the same restrictions on those lots that it imposed on other lots in the subdivision, and that the *Page 94 
covenants are confined to a lawful purpose within reasonable bounds. Therefore, the appellants argue, the judgment is erroneous and must be set aside.[3] We agree.
It is well established that this Court will not presume error and will affirm a judgment appealed from if it is supported on any valid legal ground. Odom v. Blackburn, 559 So.2d 1080 (Ala. 1990). As previously noted, the judgment in this case was based on stipulated facts. When the trial court is not presented with conflicting oral testimony, the ore tenus rule is inapplicable and this Court will sit in judgment on the evidence, McCullochv. Roberts, 292 Ala. 451, 296 So.2d 163 (1974), as well as on the application of the law to that evidence. St. ClairIndustries, Inc. v. Harmon's Pipe Fitting Co., 282 Ala. 466,213 So.2d 201 (1968).
In Hines v. Heisler, 439 So.2d 4, 5-6 (Ala. 1983), this Court reiterated the general rule governing the construction of restrictive covenants:
 "[I]n construing restrictive covenants, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property. However, effect will be given to the manifest intent of the parties when that intent is clear and the restrictions are confined to a lawful purpose within reasonable bounds, and rights created by the covenant have not been relinquished or otherwise lost. Wisneiwski v. Starr, 393 So.2d 488 (Ala. 1980). Furthermore, restrictive covenants are to be construed according to the intent of the parties in the light of the terms of the restriction and surrounding circumstances known to the parties. Kennedy v. Henley, 293 Ala. 657, 309 So.2d 435 (1975). Assuming, arguendo, that the intent of the parties is unclear, subsequent acts of the parties showing the construction they put on the instrument are entitled to great weight in determining what the parties intended. Brashier v. Burkett, 350 So.2d 309 (Ala. 1977); Kennedy, supra."
In the present case, the restrictive covenants, which were recorded in the probate court subsequent to the recording of the plat of the Schrimscher Estates subdivision, clearly indicate that J.T.S. Lands, Inc., intended to protect the owners of lots in the subdivision by imposing the same restrictions on the Cluttses' lots that it imposed on lots in the subdivision. J.T.S. Lands, Inc., apparently referred in the restrictive covenants to the Cluttses' lots as "lots . . . 6, 7, 8," as shown on the recorded plat, instead of to the metes and bounds description, in an attempt to more clearly identify the lots. Our conclusion in this regard is supported by the fact that the Cluttses' lots are clearly identified on the recorded plat by the numbers "6," "7," and "8," and by the fact that the lots were excluded from the subdivision and depicted as "cross-hatched" on the recorded plat for the sole purpose of obtaining the approval of the plat from the Commission. There is simply nothing in the record tending to show that J.T.S. Lands, Inc., did not intend for the restrictive covenants to apply to the Cluttses' lots.
We also conclude that, under the facts of this case, it is not unlawful or unreasonable for the restrictive covenants to be enforced. J.T.S. Lands, Inc., imposed the restrictions for the purpose of protecting the investments of lot owners within the subdivision. In this respect, the covenants are similar to numerous others in this state that have been imposed to protect the integrity of planned residential developments. We note from the record that the Cluttses, citing Trustees of Howard Collegev. McNabb, 288 Ala. 564, 263 So.2d 664 (1972), argued to the trial court that enforcement of the covenants would amount to a prohibition of substantially all of the legitimate uses for their property and, therefore, that the covenants were void. This argument was based on the results of the "percolation" tests. The Cluttses took the position that their lots were not suitable for the installation of septic tanks; that the lots were, therefore, not suitable for residential use; and that *Page 95 
enforcement of the covenants, which prohibit commercial development of the lots, would deprive them of substantially all of the legitimate uses for their property.
In Trustees of Howard College v. McNabb, supra, this Court stated:
 " '. . . It appears well settled that restrictions which amount to a prohibition of use of the property granted are void. Thompson on Real Property, Section 3363. . . .' Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465, 471 (1941).
 "In Moseby v. Roche, 233 Ala. 280, 282, 171 So. 351 (1936), this court held:
 "'Parties may for value voluntarily bind themselves as to the use of their property in some reasonable limited respect, which is not in general restraint of trade, or of substantially all legitimate uses of their property . . . .'"
288 Ala. at 574-75, 263 So.2d at 673-74. (Emphasis added inTrustees of Howard College). In the present case, enforcement of the covenants will not deprive the Cluttses of all the legitimate uses for their property.[4] True, the lots cannot be sold for commercial development. However, the property is still capable of being used for residential purposes. Alabama Code 1975, § 22-26-7, reads as follows:
 "(a) Land subdivided for single-family residential purposes into lots of not less than three acres in size shall not be subject to the subdivision criteria and the rules and regulations imposed by the state board of health upon development where said lots do not have access to public sewer system where:
 "(1) There is a plat restriction that the land will not be further divided into parcels of less than three acres in size until such lots have access to a public sewer system;
 "(2) Where the bedrock elevation is of sufficient depth below ground elevation to install a septic tank of sufficient capacity, header line and adequate field line system leading from said septic tank;
 "(3) Where the standard, residential percolation test times shall not exceed 60 minutes per inch, without additional information; and
 "(4) Where the water table elevation is not within five feet of ground elevation.
 "(b) At such time that all such adjoining lots have access to a public sewer system, the property may be further subdivided into lots of less than three acres in size for residential and other purposes, provided the residences and other structures designed for human habitation on the property use such public sewer system.
 "(c) Where said land is subdivided into parcels containing any tracts five acres in size and larger, such tracts shall not be subject to the provisions of subdivision (3) of subsection (a) of this section."
Assuming that the Cluttses' lots, each of which exceeds three acres, do not meet the requirements set out in § 22-26-7(a) for the installation of septic tanks,[5] we see nothing in the record to indicate that the lots could not be consolidated into a 9.93-acre lot, which could then either be put to residential use by the Cluttses or sold by them for residential development, pursuant to the exemption set out in § 22-26-7(c). We note that any diminution in value of the Cluttses' property that might result from our decision in this case is of no legal consequence. See Laney v. Early, 292 Ala. 227, 292 So.2d 103
(1974). In spite of this, after considering the relative sizes of some of the nearby lots and the prices that were paid for those lots at the auction, we further note that a 9.93-acre lot suitable for residential use would appear to be quite valuable to the Cluttses. *Page 96 
For the foregoing reasons, we hold that the Cluttses' lots are subject to the restrictive covenants recorded by J.T.S. Lands, Inc. The judgment of the trial court is, therefore, reversed, and the cause is remanded for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES and SHORES, JJ., concur.
KENNEDY, J., concurs in the result.
[1] None of the deeds in the Cluttses' chain of title states that the lots were conveyed subject to the recorded restrictions; however, Putman, Land Dealers, Inc., and the Cluttses all had at least constructive knowledge of the restrictions by virtue of the reference in each of the deeds to certain easements "that traverse across the above described 9.93 acre tract as shown on the Plat of Schrimsher Estates as recorded in Plat Book 10, Page 51, Probate Records of Madison County," and, therefore, took their respective titles subject thereto. See Ala. Code 1975, § 35-4-63; see, also, Taylor v.Kohler, 507 So.2d 426 (Ala. 1987). We note also that the deeds from J.T.S. Lands, Inc., to Putman and from Putman to Land Dealers, Inc., contained disclaimers of warranty as to any "restrictions . . . of record."
[2] The complaint alleged that the Cluttses wanted to sell their property for use as a commercial nursery.
[3] The Cluttses did not file a brief on appeal.
[4] We note that, under certain circumstances, it might not be unreasonable to enforce recorded restrictions even if the enforcement of those restrictions would result in a prohibition of substantially all of the legitimate uses of a piece of property. However, that issue is not before us in this case.
[5] The record indicates only that none of the three lots passed a "percolation" test. We are not privy to the information concerning the bedrock elevations, the percolation test times, or the water table elevations with respect to the lots.