**Joan M. ROSSMAN and Jo Anne Whiting, Plaintiffs–Appellees,**

**v.**

**The SEASONS AT TIARA RADO ASSOCIATES, a Colorado General Partnership and Transmontane Development Corporation, a General Partner, Defendants–Appellants.**

No. 95CA2099.

Colorado Court of Appeals,
Div. I.

Nov. 29, 1996.

Rehearing Denied Jan. 3, 1997.

Certiorari Denied Aug. 25, 1997.

er's amendment did not destroy general scheme or plan of development for neighborhood, and thus was valid.

Traylor, Arnold, Tompkins & Black, P.C., Jerry B. Tompkins, Grand Junction, for Plaintiffs–Appellees.

Thomas C. Volkmann, P.C., Thomas C. Volkmann, Grand Junction, for Defendants–Appellants.

Opinion by Judge METZGER.

Defendants, The Seasons at Tiara Rado Associates, a Colorado general partnership, and Transmontane Development Corporation, its general partner, appeal the judgment of the trial court granting plaintiffs, Joan M. Rossman and Jo Anne Whiting, declaratory and injunctive relief. We reverse and remand with directions.

Plaintiffs are homeowners within a subdivision developed by defendants known as The Seasons at Tiara Rado Filing No. 1. Plaintiffs live adjacent to a residence which defendants used as a sales office and model home. All three properties are subject to restrictive covenants known as the Master Covenants and the Filing No. 1 Covenants.

Plaintiffs brought this action seeking declaratory and injunctive relief, alleging that defendants' use of the residence as an office and model home violated certain restrictive covenants. In response, defendants argued that their activities were permitted by an amendment they had made to the applicable covenants under a provision reserving in them the power to amend.

After a series of hearings, the trial court, issued an injunction permanently enjoining defendants from operating a sales and development office or any other commercial activity within Filing No. 1. The court also declared that, because defendants did not own any property within Filing No. 1 and therefore could not exercise their reserved power to amend, their purported amendment of the applicable covenants was null and void. Alternatively, the court found that the amendment was unreasonable because it changed the nature of the development. In a series of later orders, the trial court also determined that plaintiffs were entitled to $15,459.65 in attorney fees and costs. Defendants appeal from those determinations.

**36**

## I.

Defendants first contend that the trial court erred in determining that they did not have the legal power to amend the Filing No. 1 Covenants. We agree.

The construction to be given to covenant documents is a question of law. *See Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Associates,* 867 P.2d 70 (Colo.App.1993). In the absence of contrary equitable or legal considerations, protective covenants that are clear on their face must be enforced as written. *Wilson v. Goldman,* 699 P.2d 420 (Colo.App.1985).

If, as here, the trial court's determination is based upon its construction of the applicable covenants, then that determination is not binding upon us on review. *See Brown v. McDavid,* 676 P.2d 714 (Colo.App.1983).

As pertinent here, the Master Covenants and the Filing No. 1 Covenants provided that a residence is to be used solely for residential purposes. Section 8.4 of the Filing No. 1 Covenants specifically prohibits a residence from being used as an office or for any other commercial purpose. However, an exception to this restriction states:

> [Defendants are] authorized to maintain a sales office or property management office on any *unsold* Lot or Common Area, as well as other facilities (including signage and model Residences) which, in the sole opinion of [defendants], may be reasonably necessary, convenient or incidental for constructing [sic] sales or property management purposes. (emphasis added)

Defendants later amended this provision to delete the word "unsold."

The Filing No. 1 Covenants also provide that defendants have the sole right and power to modify and amend the covenants by executing and recording an instrument setting forth the amendment. In addition, the Filing No. 1 Covenants reserve to defendants the right to expand or withdraw any portion of the property subject to the Filing No. 1 Covenants.

They provide:

## ARTICLE I

### DEFINITIONS

S. *'Lot'* means a plot of land subject to this Declaration and designated as a 'Lot' on any subdivision plat of the Property recorded by Declarant in the office of the Clerk and Recorder of Mesa County, Colorado, together with all appurtenances and improvements, including a Residence, now or in the future on the Lot.

. . . .

BB. *'Property'* means and refers to that certain real property described on *Exhibit A* attached to this Declaration and such additions to the Property as may in the future be brought within the jurisdiction of this Declaration in accordance with Article XIV below.

. . . .

## ARTICLE XIV

### EXPANSION

Section 14.1. *Reservation of Right to Expand.* Declarant reserves the right to expand the Property to include additional Lots and Common Area.

Section 14.3. *Expansion of Definitions.* In the event of such expansion, the definitions used in this Declaration shall be expanded automatically to encompass and refer to the Property subject to this Declaration as so expanded. For example, 'Lot' shall mean the Lots described on *Exhibit A* plus any additional Lots added by a Supplemental Declaration or Declarations, and reference to this Declaration shall mean this Declaration as supplemented. All conveyances of Lots shall be effective to transfer rights in the Property as expanded. . . .

Section 14.4. *Declaration Operative on New Lots.* The new Lots shall be subject to all of the terms and conditions of this Declaration and of any Supplemental Declaration, upon placing the supplemental plat(s) depicting the Expansion Property and Supplemental Declaration(s) of public

record in the real estate records of Mesa County, Colorado.

The trial court determined that, because defendants did not own any of the property within the Filing No. 1 plat when they amended the covenants in 1994, they were without legal power to amend. It found that, at most, "defendants owned Lot No. 1 which was considered a common area not to be developed." In addition, the court found that, because Lot No. 1 had been made part of another filing in the development, it was no longer physically a part of Filing No. 1 at the time defendants amended the covenants.

At the outset, we note that the parties agree that the record does not support the trial court's determination that Lot No. 1 was a "common area not to be developed."

The record does show that defendants, in the fall of 1992, executed a supplemental filing which expanded the number of properties subject to the Filing No. 1 Covenants. This supplemental property was later replatted by defendants in January 1993, and all but Lot No. 1 was later withdrawn from the supplemental filing. Thus, at the time defendants amended the Filing No. 1 Covenants, they continued to own one lot that had been designated by the supplemental filing and which was subject to the Filing No. 1 Covenants.

Citing the decisions in *Armstrong v. Roberts,* 254 Ga. 15, 325 S.E.2d 769 (1985), *Fairways of Country Lakes Townhouse Ass'n v. Shenandoah Development Corp.,* 113 Ill. App.3d 932, 69 Ill.Dec. 680, 447 N.E.2d 1367 (1983), and *Richmond v. Pennscott Builders, Inc.,* 43 Misc.2d 602, 251 N.Y.S.2d 845 (1964), *aff'd,* 23 A.D.2d 968, 260 N.Y.S.2d 590 (1965), both parties agree that, in order for defendants to have been able to exercise their reserved power to amend the covenants, defendants had to have had an interest in the property subject to the covenants. Contrary to plaintiffs' assertions, however, we conclude that the applicable test is not whether defendants owned any of the lots that had been originally shown on the Filing No. 1 plat; rather, the inquiry is whether defendants owned any property that was subject to the Filing No. 1 Covenants. Therefore, insofar as it is not disputed that defendants owned

Lot No. 1, which was subject to the Filing No. 1 Covenants at the time they exercised their reserved power to amend the covenants, we conclude that the trial court erred in determining that defendants had no legal power to amend.

## II.

■ Defendants next contend that the trial court erred in determining that, even if they had the legal power to amend the covenants, they did not properly exercise that power. Again, we agree.

Both parties agree that the applicable standard to determine whether defendants properly exercised their power to amend is set out in *Flamingo Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc.,* 303 So.2d 665 (Fla.Dist.Ct.App.1974). There, the court held that the grantor's reservation of power to amend restrictive covenants was valid if it was exercised in a reasonable manner so as not to destroy the general scheme or plan of development for the property.

In assuming that defendants had the legal power to amend the Filing No. 1 Covenants, the court noted that such power was not absolute. The court found that a grantor's power to amend was subject to standards of reasonableness and good faith, and could not be exercised in an arbitrary or capricious manner.

Applying these standards, the court ruled that defendants' amendment was null and void. The court found that Filing No. 1 had been fully developed as single-family residential homes and that the Master Covenants and the Filing No. 1 Covenants both intended that the properties be used for single-family residences and not for commercial purposes. The court also found that: "To allow the defendants to continue to operate a commercial sales and development office causing increased traffic, commercial signs and parking problems changes the nature of the neighborhood and benefits only the defendants and no one else in the neighborhood."

■ We conclude that the trial court construed defendants' right to amend the Filing

No. 1 Covenants too narrowly. As set forth in *Flamingo Ranch Estates Inc., supra,* a grantor reasonably exercises the right to amend if the grantor does not destroy the general scheme or plan of development for the property. Defendants' amendment of the Filing No. 1 Covenants does not reach this level.

While there is some evidence that defendants' operation of the sales office and model home increased the amount of traffic, commercial signs, and parking problems in the development, any such impact was minimal and preexisted the amendment at issue here. Indeed, the record shows that, well after the amendment, the sales office received only 110 visitors over a period of 135 days.

In addition, by its terms, the amendment merely authorized defendants' continued use of the residence as a sales office and model home. The amendment did not authorize a new or different commercial use in the neighborhood. Thus, under such circumstances, defendants' amendment to the Filing No. 1 Covenants did not destroy the general scheme or plan of development for the neighborhood.

Therefore, we conclude that the trial court erred in finding that the amendment was null and void.

### III.

Defendants also contend that the trial court erred in determining that plaintiffs were entitled to their attorney fees and costs. In light of our determination that the underlying judgment must be reversed, the trial court's award of attorney fees and costs to plaintiffs cannot stand.

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment for defendants.

HUME and ROY, JJ., concur.