**HIGHLAND MEADOW ESTATES AT CASTLE PEAK RANCH, INC., a nonprofit corporation, John Pringle, Paul Koze, Jerry Dillon, and Gretta Parks, Plaintiffs–Appellees,**

v.

**Donald BUICK, Mad Ventures, Ltd., Sorrell Hills Development Corporation, Lot 6 at Castle Peak Ranch RLLP, and Lamm Developments, Ltd., Defendants–Appellants.**

No. 98CA0048.

Colorado Court of Appeals, Div. V.

July 22, 1999.

Rehearing Denied Sept. 23, 1999.

Certiorari Granted Feb. 28, 2000.

Balcomb & Green, P.C., Scott Balcomb, David Sandoval, Lori J.M. Satterfield, Glenwood Springs, Colorado, for Plaintiffs–Appellees.

Isaacson, Rosenbaum, Woods & Levy, P.C., Frederick B. Skillern, Jessica E. Jay, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge TAUBMAN.

In this action involving restrictive covenants, defendants, Donald Buick; Mad Ventures, Ltd.; Sorrell Hills Development Corp.; Lot 6 at Castle Peak Ranch RLLP; and Lamm Developments, Ltd., appeal a judgment entered against them and in favor of plaintiffs, Highland Meadow Estates at Castle Peak Ranch, Inc., John Pringle, Paul Koze, Jerry Dillon, and Gretta Parks. We affirm.

This appeal arises primarily out of a dispute between the plaintiff homeowners' association and Buick, the subdivision's developer, over construction of a dirt road within an access easement along the side of a 35–acre lot in a rural subdivision located in Eagle County. The subdivision consists of twenty 35–acre lots and various other parcels of land.

The owner of Lot 6 began construction of a road within an access easement along the eastern border of the lot which extended to the southern portion of the lot. Construction was discontinued in 1993, and resumed in 1996 when the owner began widening and lengthening the road so that it extended onto a parcel directly south of Lot 6. When completed, the road would provide access from that parcel, owned in part by the owner of Lot 6, to a private road serving the lots in the subdivision.

Plaintiffs brought suit against the owner of Lot 6 to void the easement and enjoin construction of the road on the grounds that the road violated the "single-family dwelling" restriction in the covenants. Plaintiffs also filed suit against Sorrell Hills and Mad Ventures (collectively Lot 13), entities which own Lot 13 in the subdivision, to invalidate a similar access easement.

After obtaining a preliminary injunction enjoining further construction of the road, the plaintiffs received a favorable judgment from the trial court at trial. The trial court, among other things, voided the easements on Lot 6 and Lot 13, enjoined defendants from the use, construction, or improvement of the dirt road on Lot 6, and awarded plaintiffs attorney fees pursuant to the Colorado Common Interest Ownership Act (CCIOA), § 38–33.3–117, C.R.S.1998.

## I. Mootness

■ At the outset, we consider and reject plaintiffs' contention that, by virtue of an alleged judicial admission by counsel for defendants during his opening statement at the hearing on attorney fees, this appeal is moot.

■ Judicial admissions are binding on the party who makes them, are evidence against such party, and may constitute the basis of a verdict. *Larson v. A.T.S.I.*, 859 P.2d 273 (Colo.App.1993). Such admissions may be made by a party's counsel, need not be written, and can occur in oral argument. *Kempter v. Hurd*, 713 P.2d 1274 (Colo.1986). However, the alleged admission must also be unequivocal. *Anderson v. Watson*, 929 P.2d 6 (Colo.App.1996).

Here, in his opening statement at the hearing on attorney fees, defense counsel stated:

> Now, it is our position in the case, I think the evidence will indicate, that it's reasonable, that you should tax fees with regard to this case and that there should be a fair amount of fees taxed based upon the work done ... [W]e respectfully submit to you that you should award fees in this case and there should be some fees taxed, and it is in the range of 25 to $30,000, and that is a fair number.

Plaintiffs claim that these statements are fatal to defendant's appeal because, they assert, they are admissions that an award of fees is appropriate and, therefore, represent a further admission that the underlying judg-

ment on liability is also proper. We disagree.

The statements do not represent unequivocal agreement by defendants with the award of attorney fees and the judgment on the merits against them. Rather, we construe them as statements by defense counsel that, because the court had already decided to award fees, it would be reasonable to award an amount of fees in the range of $25,000 to $30,000. Thus, we decline to dismiss the appeal on the basis of mootness. *See Anderson v. Watson, supra.*

## II.  Statutes of Limitations

■ Defendants contend that plaintiffs' claims to enjoin construction and use of the road were barred by § 38–33.3–123(2) & § 38–41–119, C.R.S.1998. We are *not* persuaded.

Both of these statutes provide for a one-year statute of limitations to challenge building restriction violations. *See* § 38–33.3–123 & § 38–41–119, C.R.S.1998.

Here, defendants raised the statute of limitations defense in their answer to plaintiffs' second amended complaint and in the trial management order. However, they did not raise the issue again at any time during or after the trial until this appeal. They did not mention the issue in their opening and closing statements, and further failed to bring it to the trial court's attention either in their oral motion for directed verdict or in their motion for a new trial.

■ Because an appellate court is a forum for review, "an issue should ordinarily be brought to the trial court for ruling before it can be claimed as error on appeal." *Minto v. Lambert,* 870 P.2d 572, 575 (Colo.App.1993). It does not suffice to raise an issue in a trial management order without requesting the trial court to rule on it at trial.

Thus, the issue was not properly preserved and cannot now be the basis for error on appeal. *See Minto v. Lambert, supra* (even if raised in the pleadings, an issue should ordinarily also be brought to the attention of the trial court for ruling before it can be claimed as error on appeal).

## III.  "Single–Family Dwelling" Restriction

■ Defendants contend that the trial court erred in enjoining the owners of Lot 6 and Lot 13 from constructing roads across the lots. More specifically, defendants allege that the provision on "single-family dwellings" in the covenants is a structural restriction that limits the types of structures that can be built on the lots and is not a use restriction which prohibits the building of roads not used in connection with the residence. We find this contention unpersuasive.

The covenants at issue here state in pertinent part that: "All lots shall be used *exclusively* for single-family dwellings which shall not exceed two residences (a primary and a secondary residence)." (emphasis added)

Here, the trial court concluded that the covenant at issue limiting the property to residential purposes was a use restriction and not just a structural restriction on the types of building which could be constructed on the property.

■ Interpretation of a covenant is a question of law. Covenants which are clear on their face must be enforced as written. *Rossman v. Seasons at Tiara Rado Associates,* 943 P.2d 34 (Colo.App.1996). Covenants must be construed as a whole in view of their underlying purpose. *Richey v. Olson,* 709 P.2d 963 (Colo.App.1985).

■ In construing a covenant, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property. However, this rule has no application when the language of the covenant is clear. *Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n,* 773 P.2d 1046 (Colo. 1989).

Defendants rely upon *Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n, supra; Greenbrier–Cloverdale Homeowners Ass'n v. Baca,* 763 P.2d 1 (Colo.App. 1988); and *Richey v. Olson, supra,* in support of their contention that "single-family dwelling" restrictions regulate only the *types* of structures that may be built, rather than the *use* of the property. However, each of these cases involved disputes over whether

the dwelling itself could be used for other than residential purposes. Therefore, none is dispositive.

The authority relied upon by the plaintiffs is more analogous to the situation present here and, thus, more persuasive.

In *D.C. Burns Realty & Trust Co. v. Mack*, 168 Colo. 1, 450 P.2d 75 (1969), the supreme court held that homeowners could rely upon restrictions in covenants relating to residential use to enjoin construction of an access road. There, the covenant at issue stated that: "None of the said lots shall be improved with or occupied for other than private single family residential purposes...." *D.C. Burns Realty & Trust Co., supra*, 450 P.2d at 76. One of the lot owners removed the residence which had been built on the lot, intending that the property be used exclusively as a roadway to a nearby shopping center. The supreme court enjoined the lot owner from using the land solely as a roadway.

While the *Burns* case is not directly on point because of factual differences, authority from other jurisdictions supports our conclusion that *Burns* applies in this case and the restrictive covenant here is a use restriction.

As the parties note, there are two lines of cases involving the interpretation of covenants which restrict property use to residential purposes.

One line of cases holds that such covenants do not prevent the construction of roads on property subject to the covenants. *See R.R. Improvement Ass'n v. Thomas*, 374 Mich. 175, 131 N.W.2d 920 (1965)(case remanded for factual findings concerning whether road construction that had been enjoined would adversely affect the residential advantages effectuated by covenants); *Vinyard v. St. Louis County*, 399 S.W.2d 99 (Mo.1966)(use of platted driveway on a portion of lot in a residentially restricted subdivision for access to apartment on adjacent land was not prohibited); *Baxendale v. Property Owners Ass'n*, 285 A.D. 1148, 140 N.Y.S.2d 176 (1955)(covenants providing that all plots be known and described as residential plots did not prohibit landowner from constructing road); *Bove v. Giebel*, 169 Ohio St. 325, 159

N.E.2d 425 (1959)(owners of a lot in a subdivision restricted to use for residential purposes may use such lot to construct a road from adjoining land they own located outside of subdivision).

The other line of cases, which adopt what we believe is the better rule, holds that covenants which restrict property to residential purposes are use restrictions, and prohibit the construction of roads which are not used in connection with the residence across such property. *See Lincoln Savings & Loan Ass'n v. Riviera Estates Ass'n*, 7 Cal.App.3d 449, 87 Cal.Rptr. 150 (Cal.Dist.Ct.App.1970) (court enjoined property owner from using lot to provide access to lots outside the subdivision where subdivision restrictions prohibited use of property for non-residential purposes); *Easterwood v. Burge*, 103 N.C.App. 507, 405 S.E.2d 787 (1991)(covenant restricting property to "residential use only" prohibited construction of access road to separate parcel); *Cole v. Cummings*, 691 S.W.2d 11 (Tex.App.1985)(same); *Calvary Baptist Church v. Adams*, 570 S.W.2d 469 (Tex.Civ. App.1978)(court enjoined construction of parking lot and driveway on lot where covenant restricted property owner to residential use).

Similarly, in *Long v. Branham*, 271 N.C. 264, 156 S.E.2d 235 (1967), the North Carolina Supreme Court held that a covenant providing that no lot in the subdivision could be used for anything except residential purposes prevented a lot owner from constructing a roadway across part of his lot. The restriction in *Branham* indicated that: "No lot shall be used except for residential purposes." *Long v. Branham, supra*, 156 S.E.2d at 237. The *Branham* court reasoned that "if lots are restricted to residential use only, that is tantamount to saying that they are restricted solely to residential use in that subdivision. We hold that the restrictive covenants [at issue here] preclude the road proposed by defendant." *Long v. Branham, supra*, 156 S.E.2d at 243.

We conclude that *Long v. Branham* and similar cases are more persuasive in interpreting the meaning of a restrictive covenant that provides that lots must be used exclu-

sively for single-family dwellings and adopt their reasoning and analysis.

Here, the covenant stated that the lots must be used *exclusively* for single-family dwellings. This covenant is even more restrictive than that in *Long v. Branham.* Thus, the language of the restrictive covenant at issue here dictates that it is a use restriction, and therefore, the use of the lots must be restricted to a specific type of residential dwelling, single-family homes.

Moreover, the record indicates that Buick intended to develop the parcel to which the road provided access for other than residential purposes. Indeed, the owners of Lot 6 do not contend that the road was incidental to the permitted use of single-family dwellings. Thus, the road construction cannot be said to have served the enjoyment of the other residential property owners belonging to the homeowners' association. *See Duklauer v. Weiss,* 18 Misc.2d 747, 182 N.Y.S.2d 193 (N.Y.Sup.Ct.1959)(court enjoined construction of road across lots restricted to residential purposes even though defendant denied that he intended to subdivide the parcel to which the road provided access).

Accordingly, we conclude that the covenants at issue here precluded the construction of the road across Lot 6.

Finally, although defendants assert that giant ravines prevented practical access to the southern parcel from a platted access easement, they do not contend that they were entitled to build the road on the basis that the parcel to which they wanted access was landlocked, thus entitling them to an easement by necessity. *See Bear Creek Development Corp. v. Genesee Foundation,* 919 P.2d 948 (Colo.App.1996).

## IV. Lot 13

■ Defendants allege that the trial court erred in concluding that the owners of Lot 13 violated the covenants. More specifically, they argue that, because they merely acquired property which was subject to a similar easement as that pertaining to Lot 6, but did not build a road upon it, the trial court erred in imposing liability upon them. Again, we are not persuaded.

The Lot 13 defendants have litigated and defended this matter in the same manner as the Lot 6 defendants, rather than disclaiming their interest in the easements at issue. Together, defendants denied that the easements were void, and denied that they had violated the covenants. Thus, even though there was no evidence that the Lot 13 defendants had constructed a road on their easement, we agree with the trial court that: "Although the actual cutting of the road was on Lot 6, there was always a threat that similar work was to be done on Lot 13. The legal issues as between Lot 6 and Lot 13 were virtually identical. The legal issues predominated [over] the factual issues."

The record supports the trial court's findings of fact, and accordingly, we conclude that its imposition of liability as to Lot 13 was not erroneous. *See Calvary Baptist Church v. Adams, supra* (the "affirmative prospect" of a substantial breach of a covenant is enough to hold a party liable).

## V. Attorney Fees

Defendants also contend that the trial court erred by entering an award of attorney fees pursuant to § 38–33.3–103, C.R.S.1998, of the CCIOA against the owners of Lot 6 and Lot 13. Again, we disagree.

■ The CCIOA provides for an award of attorney fees to the prevailing party in actions to enforce restrictive covenants under the act. Section 38–33.3–103(1), C.R.S.1998. Such an award is mandatory. *Pagosa Lakes Property Owners Ass'n v. Caywood,* 973 P.2d 698 (Colo.App.1998).

Defendants concede that the lots at issue here constitute a common interest community and, thus, are subject to the CCIOA. Moreover, defendants do not challenge on appeal the reasonableness of the amount of fees awarded. Rather, they challenge the award of fees based solely on their contention that the owners of Lot 6 and Lot 13 complied with the covenants. Because we have concluded that the owners of Lot 6 and Lot 13 based their defenses on illegal easements, we reject their argument.

Plaintiffs are also entitled to an award of attorney fees in connection with this appeal,

and the cause must be remanded to the trial court for a determination of the amount of such fees. *See Pagosa Lakes Property Owners Association v. Caywood, supra.*

The judgment of the trial court is affirmed, and the cause is remanded for a determination and award to plaintiffs of the attorney fees incurred in this appeal.

Judge ROY and Judge PIERCE * concur.