Donald BUICK; Mad Ventures, Ltd.; Sorrell Hills Development Corp.; and Lot 6 at Castle Peak Ranch RLLP, Petitioners,

v.

HIGHLAND MEADOW ESTATES AT CASTLE PEAK RANCH, INC., a nonprofit corporation; John Pringle; Paul Koze; Jerry Dillon; and Gretta Parks, Respondents.

No. 99SC810.

Supreme Court of Colorado,
En Banc.

April 16, 2001.

Isaacson, Rosenbaum, Woods & Levy, P.C., Blain D. Myhre, Denver, CO, Attorneys for Petitioners.

Balcomb and Green, P.C., Scott Balcomb, Lori J.M. Satterfield, David Sandoval, Glenwood Springs, CO, Attorneys for Respondents.

Justice KOURLIS delivered the Opinion of the Court.

This case involves the interpretation of a restrictive covenant applicable to the Highland Meadow Estates at Castle Peak Ranch, Inc., homeowners' association (homeowners' association)[1] in rural Eagle County, which states in part: "All lots shall be used exclusively for single-family dwellings which shall not exceed two residences." The question is whether that covenant prevents construction and use of an easement over two Lots in the subdivision, Lots 6 and 13, to access a third lot, south Parcel C, outside of the subdivision. The homeowners' association brought an action against the owners of Lot 6 and Lot 13 to invalidate easements and enjoin the construction and use of roads over those lots to south Parcel C. Highland Meadow brought these claims pursuant to the Colorado Common Interest Ownership Act, sections 38–33.3–101 to –319, 10 C.R.S. (2000) (CCIOA).

The court of appeals determined that the dirt road constructed on Lot 6, pursuant to the easement, violated the restrictive covenants. *Highland Meadow Estates at Castle Peak Ranch, Inc. v. Buick,* 994 P.2d 459, 464 (Colo.App.1999). The court of appeals also concluded that under the CCIOA, the owners

of Lot 13 were required to pay attorney fees based on a threat that those owners would also build a road.[2] *Id.* Donald Buick served as a developer and marketer of the subdivision. Donald Buick, Mad Ventures, Ltd., Sorrell Hills Development Corp., and Lot 6 at Castle Peak Ranch, RLLP (Buick), seek review of that decision.

We agree with the court of appeals that the single-family dwelling restrictive covenant precludes the owners of Lot 6 and Lot 13 from constructing a road across those Lots to serve south Parcel C. The covenant is a "use" restriction that curtails the uses an owner may make of his lot. Those uses are limited to such uses as serve single-family dwellings, and therefore cannot include an easement that permits construction of an access road across the lot to serve other property. However, we also conclude that the trial court findings do not support an allocation of thirty percent of Highland Meadow's attorney fees against the owner of Lot 13, because that owner took no action toward building a road, but rather awaited the outcome of the court case before proceeding. We therefore affirm in part, reverse in part and remand for reallocation of attorney fees.

I.

The Highland Meadow Estates at Castle Peak Ranch subdivision consists of twenty thirty-five acre lots and various other parcels of land. Although the subdivision plat includes south Parcel C, that parcel is not part of the homeowners' association. The lots included in the homeowners' association are subject to the plat and the restrictions stated in the Second Amendment and Restatement of Declaration of Covenants, Conditions, Restrictions, and Easements for Highland

1. Highland Meadow is a Colorado non-profit corporation empowered, in part, to manage and maintain the access roads within the subdivision. The other named plaintiffs in the case were lot owners within Highland Meadow and members of the homeowners' association.

2. We granted certiorari to determine two issues:
    (1) Whether the court of appeals erred in holding that petitioners violated a covenant providing that "all Lots shall be used exclusively for single-family dwellings" by allowing the owner of the dominant estate to improve an

easement across the lot for the purpose of providing access to adjoining residential land.
    (2) Whether the court of appeals erred in awarding attorney's fees pursuant to section 38–33.3–123, 10 C.R.S. (2000), which mandates an award of attorney fees to the prevailing party in an action to enforce covenants, against the Lot 13 owners based on a threat that the owners would seek to build a road on an existing easement in the future.

Meadow Estates at Castle Peak Ranch (the covenants).

The covenant at issue states, in relevant part: "All lots shall be used exclusively for single-family dwellings which shall not exceed two residences (a primary and a secondary residence)." The covenants also provide that the homeowners' association or any record owner of any lot shall have the right to enforce the covenants at law or in equity.

Castle Peak Ranch Land Trust, the previous owner of both Lot 6 and Lot 13, granted an Access Driveway Easement over Lot 6 and Lot 13 for the benefit of south Parcel C, then owned by the Cherokee Land Trust. Donald Buick, a partner of Lot 6 RLLP, a Colorado registered limited liability partnership, began construction in 1993 of a road within an access easement along the eastern border of Lot 6 extending to the southern portion of the lot. Construction was discontinued and then resumed in 1996 when Lot 6 RLLP reexcavated and relocated a new road across and through Lot 6 extending into south Parcel C, a parcel directly south of Lot 6. The road was designed to provide access from south Parcel C, owned in part by Lot 6 RLLP, to Access Easement B, a private road serving the lots in the subdivision.

In September of 1996, Highland Meadow brought suit against Lot 6 RLLP to void the easement and enjoin construction of the road on the grounds that the road violated the "single-family dwelling" restrictive covenant. Highland Meadow also filed suit against Sorrell Hills and Mad Ventures, entities that own Lot 13 in the subdivision, to invalidate a similar access easement on Lot 13.

On December 11, 1996, Mary Wheeler, managing partner of Lot 6 RLLP, applied to the Design Review Committee of Highland Meadow Estates for approval of a "driveway" over Lot 6 to south Parcel C. The Design Review Committee denied the application.

The trial court issued a preliminary injunction on March 5, 1997, enjoining any further construction or improvement of the road on Lot 6. Following a bench trial, the trial court found that the "single-family dwelling" language of the restrictive covenant restricts the use of the lots, not just the type of

structures that may be built on the lots, and that the road across Lot 6 is in violation of the residential use restriction. The trial court voided the easements on Lot 6 and Lot 13, enjoined Buick from the use, construction, or improvement of the dirt road on Lot 6, directed Buick to restore Lot 6 to its original condition before excavation and construction of the road, and awarded attorney fees against both the Lot 6 and Lot 13 owners pursuant to the Colorado Common Interest Ownership Act, section 38–33.3–123, 10 C.R.S. (2000).

The court of appeals affirmed the trial court's decision, finding that the restrictive covenant was a use restriction that prohibited the construction of roads across the property that are not used in connection with the single-family residence. *Highland Meadow Estates*, 994 P.2d at 464. The court of appeals also upheld the award of attorney fees against the Lot 13 owners and remanded for an additional award of attorney fees to cover the cost of the appeal. *Id.*

## II.

### A.

■■■ Construction of a covenant is a question of law that requires de novo review. *Rossman v. Seasons at Tiara Rado Assocs.*, 943 P.2d 34, 36 (Colo.App.1996). When interpreting a restrictive covenant, courts must "follow the dictates of plain English." *Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n*, 773 P.2d 1046, 1048 (Colo.1989). Courts will enforce a covenant as written that is clear on its face. *Rossman*, 943 P.2d at 36. We construe covenants as a whole, keeping in mind their underlying purpose. *Tri–State Generation & Transmission Co. v. City of Thornton*, 647 P.2d 670, 681 (Colo.1982). When interpreting an unclear covenant, courts resolve all doubts against the restriction and in favor of free and unrestricted use of property. *Double D Manor*, 773 P.2d at 1048.

■■■ Buick argues that the court of appeals erred in holding that he violated the "single-family dwelling" covenant by building a road across Lot 6 to provide access to south Parcel C. Buick claims that the cove-

nant only restricts the types of structures lot owners may place on the property, not the broader use of the property.

The covenant at issue states, "All lots shall be used exclusively for single-family dwellings which shall not exceed two residences (a primary and a secondary residence)." Buick argues that the court of appeals wrongfully distinguished the present covenant from the covenant discussed in *Double D Manor* when it relied on *D.C. Burns Realty & Trust Co. v. Mack*, 168 Colo. 1, 450 P.2d 75 (1969).

In *Double D Manor*, we construed a covenant reading, "All sites shall be used for residential uses only, with only one single-family dwelling permitted on any site." 773 P.2d at 1047. We held the phrase "single-family dwelling" described and limited only the type of structure permitted on the property and not the type of use that can be made of the property. We therefore concluded that a group home for six developmentally disabled children and resident staff did not violate the terms of the covenant. *Id.* at 1050. The *Double D Manor* court also held that this type of use did not violate the "residential uses only" language of the covenant. *Id.* at 1051.

*D.C. Burns* involved a covenant reading, "None of said lots shall be improved with or occupied for other purposes than private single family residential purposes, and no store, business house or gasoline station shall be erected thereon or used and occupied thereof." 168 Colo. at 2, 450 P.2d at 76. In *D.C. Burns*, we held that the language created a use restriction such that a lot owner who removed a residence and graded the property for exclusive use as a roadway to a nearby shopping center violated the covenant. *Id.* at 5, 450 P.2d at 77.

Both *Double D Manor* and *D.C. Burns* guide us in our resolution of this case. Like the covenant in *D.C. Burns*, this covenant provides that the property is to be *"used exclusively* for single-family dwellings." (Emphasis added.) Accordingly, we conclude that it restricts not only the type of building that an owner may place on the land, but also the use of the land.

Further, similar to *Double D Manor*, the covenant in the instant case imposes both a structural restriction and a use restriction. In *Double D Manor*, the covenant restricted the structures on the property to "single family dwellings" and the use of the property to "residential." In this case, the covenant restricts the structures on the property to a primary and a secondary residence and the use to only those activities associated with single-family dwellings.

Additionally, a complete reading of the balance of the covenants supports the conclusion that the restrictions govern not only residential construction, but also attendant uses such as driveways and parking areas. In addition to setting out the Primary Residence requirements and Secondary Residence requirements, the covenants establish a Design Review Committee. The committee's purpose is to "approve or reject proposed Improvements on the Lots, all in compliance with the Declaration." Improvements are defined as "all buildings and structures, parking areas, fences, walls, hedges, plantings, driveways, ponds, and signs." The Committee may adopt design guidelines for the property. The covenant gives the Committee the authority to ensure that "Improvements conform and harmonize with any existing structures. The external design, quality of construction, materials, color, location on the Lot, height, grade and finished ground elevation, and all aesthetic considerations are factors to be considered by the Committee." The covenants grant the Committee broad latitude in making aesthetic decisions with respect to every type of improvement on the property, confirming that the lot owners expect to buy into a residential community with restrictions not only on the types of homes that they may build, but also the total use of the lot.

Other courts have construed use restriction language similarly. For example, in *Turner v. Clutts*, 565 So.2d 92 (Ala.1990), the Alabama Supreme Court interpreted a covenant that stated, "All lots shall be used for single family dwellings" to require that the land in question be used only for residential purposes. *Id.* at 93. The *Turner* case in-

volved lots in a subdivision plat that were not suitable for building upon. *Id.* Even though the property could not sustain a single-family dwelling, the court held that the land owners were still required to use the land for residential purposes and could not sell it for commercial development. *Id.* at 95.

## B.

■ Because we find that the Highland Meadow covenant serves as a use restriction upon the lot owners, we next examine whether or not a road across the property violates that restriction. We conclude that it does. The road does not serve a single family residence on the lot, but rather provides access to another parcel of land. The use of the property for that byway or thoroughfare purpose is not consistent with the language of the use restriction, and could be seen to violate the character of the single-family development.

In *Cole v. Cummings*, 691 S.W.2d 11, 14 (Tex.Ct.App.1985), the Texas Court of Appeals addressed a similar factual circumstance. In that case, the defendants "created an easement forty-eight feet wide along the north side of Lot 6" and planned to construct a roadway through Lot 6 to allow access to a parcel they owned outside the subdivision. *Id.* The plaintiffs sought injunctive relief on the basis that the proposed roadway violated the residential use restrictive covenant. *Id.* The trial court denied injunctive relief to the homeowners, but the Texas Court of Appeals reversed, holding, "We conclude that use of part of Lot 6 as a roadway or street substantially breaches the covenant requiring the property to be used generally for residential purposes. Additionally, the creation of the roadway would violate the covenant against resubdivision of any lot." *Id.* at 15; *see also Lincoln Sav. & Loan Ass'n v. Riviera Estates Ass'n*, 7 Cal. App.3d 449, 87 Cal.Rptr. 150, 156, 160 (1970) (stating that where the subdivision restrictions prohibited use of the property for non-residential purposes and required the homeowners' association's approval for any structures erected on the site, the court enjoined the property owner from using a residential

lot to provide access to two lots located immediately outside the subdivision); *Easterwood v. Burge*, 103 N.C.App. 507, 405 S.E.2d 787, 789 (1991) (holding that a covenant restricting property to "residential use only" prohibited construction or access road to separate parcel); *Calvary Baptist Church v. Adams*, 570 S.W.2d 469, 474–75 (Tex.Civ. App.1978) (holding that the construction of a roadway and parking lot "would amount to a substantial violation of the restrictive covenant" restricting use of lots to residential); *Long v. Branham*, 271 N.C. 264, 156 S.E.2d 235, 239 (N.C.1967) (stating, "it is quite clear that the use or grant of a right-of-way across property restricted to residential use to reach property for business, commercial, or other forbidden enterprises violates the restrictive covenants").

In summary, we hold that the restrictive covenant at issue is a use restriction and precludes construction of a road across one lot in the subdivision as access to another parcel.

## III.

■ We next turn to the issue of the trial court's imposition of attorney fees upon the owners of Lot 13 pursuant to the CCIOA.[3] Because this issue involves the legal construction of a statute, the question of whether the trial court properly imposed attorney fees against the owners of Lot 13 requires de novo review. *Robles v. People*, 811 P.2d 804, 806 (Colo.1991).

The statute reads as follows:

If any person subject to the provisions of this article fails to comply with any of its provisions or any provision of the declaration, bylaws, articles, or rules and regulations, any person or class of persons adversely affected by the failure to comply may require reimbursement for collection costs and reasonable attorney fees and costs incurred as a result of such failure to comply, without the necessity of commencing legal proceeding. For each claim, including but not limited to counterclaims, cross-claims, and third-party claims, in any

---

**3.** The attorney fees award against the owners of    Lot 6 is not before us.

legal proceeding to enforce the provisions of this article or of the declaration, bylaws, articles, or rules and regulations, the court shall award to the party prevailing on such claim the prevailing party's reasonable collection costs and attorney fees and costs incurred in asserting or defending the claim.

§ 38–33.3–123(1), 10 C.R.S. (2000).

Sorrell Hills and Mad Ventures argue that the court of appeals erred in affirming the trial court's order awarding attorney fees against them because the CCIOA does not permit an award of attorney fees absent findings that an owner failed to comply with restrictive covenants. Sorrell Hills and Mad Ventures contend that the trial court inappropriately relied on a "threat" that the parties would build a road similar to the one on Lot 6 on Lot 13.

In the Findings of Fact, the trial court stated:

6. The road and easement issue ripened and came to a head when a bulldozer appeared on Lot 6. The Lot 13 easement deed was lurking in the background in this litigation. Although the actual cutting of the road was on Lot 6, there was always a threat that similar work was to be done on Lot 13. The legal issues as between Lot 6 and Lot 13 were virtually identical. These legal issues predominated over the factual issues.

7. The Court believes that a significant amount of fees should be allocated to the owners of Lot 13. The plaintiffs have presented evidence that the recoverable fees should be apportioned 70% to the owner of Lot 6 and 30% to the owners of Lot 13. Such apportionment is supported by testimony from plaintiffs' counsel and their expert witness. It is also proper because the owners of Lot 13 could have easily disclaimed an interest in the litigation of the easement issue or have agreed to be bound by the adjudication of the Lot 6 easement matter; the owners of Lot 13 did not do so. The Court believes that an allocation of up to 40% of the fees against the owners of Lot 13 would have been reasonable and rational.

Pursuant to these findings of fact, the trial court found that the owners of Lot 13 violated the covenant and allocated to them thirty percent of the responsibility for the attorney fees.

The court of appeals upheld this award against the Lot 13 owners. The court noted that "the Lot 13 owners have litigated and defended this matter in the same manner as the Lot 6 owners, rather than disclaiming their interest in the easement at issue. Together, defendants have denied that the easements were void, and denied that they had violated the covenants." *Highland Meadow Estate*, 994 P.2d at 464. The court of appeals noted that the record supports the trial court's findings of fact and concluded that its imposition of liability against the Lot 13 owners was not clearly erroneous. The appellate court cited *Calvary Baptist Church*, 570 S.W.2d at 474, for the proposition that the "affirmative prospect" of a substantial breach of a covenant is enough to hold a party liable.

*Calvary Baptist Church* involved a church's acquisition of property with plans to build a church and parking lots for the church. 570 S.W.2d at 471. The church started construction of water and sewer lines on the property and distributed brochures to neighboring residents explaining the proposed parking lots and driveway. *Id.* at 473. The Texas Court of Civil Appeals considered those actions sufficient to constitute an "affirmative prospect" of a substantial breach of the covenants. *Id.* at 474.

We agree that, as a matter of law, the trial court ruling invalidating the easement, as upheld by the court of appeals and this court, means that Highland Meadow prevailed in this litigation. Accordingly, under the CCIOA, the trial court properly awarded attorney fees to Highland Meadow, and the opposing parties must bear those fees.

However, we find insufficient evidence in the record to support an allocation of thirty percent of those fees to the owners of Lot 13. Allocation, in our view, must be commensurate with "failure to comply" with the covenants. Unlike the owners of Lot 6, or the church in *Calvary Baptist Church*, the owners of Lot 13 took no action to use the easement. Furthermore, the notion that the

Lot 13 owners could have simply disclaimed the easement is unavailing. Since Lot 13 is the burdened, not benefited, estate, the owners of Lot 13 could not have unilaterally vacated the easement.

Perhaps the Lot 13 owners did take some actions, either prior to or during the litigation, that disadvantaged Highland Meadow in its quest to enforce the covenants, but those actions are not apparent in the trial court findings at present. Rather, the trial court based the thirty percent assessment on its finding that "there was always a *threat* that similar work was to be done on Lot 13." (Emphasis added.) This "threat" of a road without any affirmative action toward its construction does not support such a large apportionment of the attorney fees. Therefore, we remand this issue to the trial court for reapportionment of the attorney fees in a manner more consistent with the Lot 13 owners' actual involvement in the case.

### IV.

In conclusion, we hold that the Highland Meadow Estates covenant does impose a residential use restriction on Lot 6. Therefore, we uphold the court of appeals' ruling that the road across Lot 6 to south Parcel C violates the use restriction and Lot 6 must be returned to its original condition. In addition, we hold that the trial court improperly imposed attorney fees on the owners of Lot 13 for failure to comply with the restrictive covenant. We therefore affirm in part, reverse in part and remand this case for further proceedings.