Jerry ALLEN and Lou Ann Allen, Plaintiffs–Appellees,

v.

Glen REED and Mary Decker Reed, Defendants–Appellants.

No. 04CA2206.

Colorado Court of Appeals, Div. III.

June 29, 2006.

As Modified on Denial of Rehearing Sept. 7, 2006.

Anderson, Dude & Lebel, P.C., Steven P. Bailey, Diane M. Astourian, Colorado Springs, CO, for Plaintiffs–Appellees.

Laff, Campbell, Tucker, Delaney & Gordon, L.L.P., Darrel L. Campbell, Greenwood Village, Colorado, for Defendants–Appellants.

Opinion by Judge FURMAN.

In this action to enforce certain restrictive covenants, defendants, Glen and Mary Decker Reed, appeal from the trial court's judgment granting a permanent injunction in favor of plaintiffs, Jerry and Lou Ann Allen, requiring the removal of the Reeds' house addition. We reverse.

The Allens and the Reeds own adjacent properties located near the Eleven Mile Reservoir in Lake George, Colorado, which are included in the Eleven Mile Recreation Association (Association). Both properties are subject to certain restrictive covenants as set forth in the Declaration of Restrictions, Obligations and Reservations dated September 27, 1960 (covenants). The purpose of the covenants is "that harmonious and attractive development of the property may be accomplished."

The covenants set forth standards restricting height on all dwelling houses to not more than one story measured from finished grade. There is no specific measurement for determining the height of one story above finished grade.

No architectural control committee was in place to enforce the covenants, and there was conflicting testimony as to whether the Association's board of directors was responsible for enforcing them.

The Allens' property is immediately above and adjacent to the Reeds' property, over which the Allens enjoyed an unobstructed view of the lake below. The Reeds took title to their property in 1991, and the Allens took title to their property in 1995. At the time the Allens purchased their property, the only structure on the Reeds' property was a small, one-story log cabin.

In 2002, the Reeds began construction of an addition to their cabin, which included an A-frame with an upper level loft bedroom suite, and a vaulted ceiling extending twenty-three feet from the floor of the original structure to the top of the roof. The Reeds' addition was patterned after other A-frame homes in the area and complied with Park County regulations that restrict the height of a dwelling to thirty-five feet.

The Allens filed suit seeking to enjoin the Reeds from constructing the addition, alleging it violated the covenants. The trial court heard and denied the Allens' motion for preliminary injunction.

However, following completion of the addition, the trial court granted a permanent

injunction in favor of the Allens. After finding that the Reeds' addition exceeded one story, thereby violating the covenant standards for height restrictions, the trial court ordered the Reeds to remove the offending structure.

This appeal followed.

## I.

The Reeds contend that the term "one story" as used in the covenants is ambiguous and unenforceable when applied to their addition because it does not establish an enforceable height restriction. We agree.

## A.

We must "follow the dictates of plain English" when interpreting a restrictive covenant. *Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n,* 773 P.2d 1046, 1048 (Colo.1989) (quoting *D.C. Burns Realty & Trust Co. v. Mack,* 168 Colo. 1, 4, 450 P.2d 75, 76 (1969)). When the language of a covenant is clear, we will enforce it as written. *Rossman v. Seasons at Tiara Rado Assocs.,* 943 P.2d 34 (Colo.App. 1996). When it is unclear, we resolve all doubts against the restriction "and in favor of free and unrestricted use of property." *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.,* 21 P.3d 860, 862 (Colo. 2001).

In ascertaining whether certain provisions of an instrument are ambiguous, we must examine the instrument's language and construe it in harmony with the plain and generally accepted meaning of the words employed. Terms are ambiguous when they are susceptible of more than one reasonable interpretation. *Ad Two, Inc. v. City & County of Denver,* 9 P.3d 373 (Colo.2000).

Nonetheless, "[w]e construe covenants as a whole, keeping in mind their underlying purpose." *Buick, supra,* 21 P.3d at 862. Our interpretation should give effect to all provisions contained in the covenants. *Richey v. Olson,* 709 P.2d 963, 964 (Colo.App. 1985).

The interpretation of a covenant is a question of law which we review de novo.

*Evergreen Highlands Ass'n v. West,* 73 P.3d 1 (Colo.2003).

## B.

The relevant section of the covenants states:

(3) The height of any dwelling house shall not exceed one story, measured from finished grade. However, the dwelling house may be constructed on multiple levels, provided the highest level does not exceed one story in height above finished grade.

A plain reading of this covenant shows that its purpose is to establish restrictions on the "height of any dwelling house." Thus, to establish that the Reeds are in violation of the covenant, the Allens had to show that the addition exceeded one story in height. Any other reading would render the term "height" superfluous. However, the covenants do not contain definitions or provide concrete dimensions as to when the Reeds' addition would exceed the height of one story.

The failure to prescribe any numerical measure for the maximum "height" of a story renders the language of the covenant susceptible of more than one interpretation. *See Ad Two, Inc., supra.* Without such a measure, there is simply no way to know whether the Reeds' addition violated the covenants.

The ambiguity and ineffectiveness of the covenant are evident in the trial court's order.

The trial court adopted the Uniform Building Code (UBC) definition of a "story" as the "distance of living space from floor to ceiling." The court concluded that by constructing what the Reeds refer to as a "loft" with floor space between the finished grade and the upper ceiling, the Reeds' addition constituted a two-story structure in violation of the covenants.

Under the trial court's definition of "story," removal of the "loft" would make the addition one story by not having floor space between the finished grade and the upper ceiling, but the resulting structural change would be unnoticed by the Allens. As a

further example, had the Reeds' addition been thirty-five feet high without any such "loft," it would also be one story by not having floor space between the finished grade and the upper ceiling. However, the roofline would lie twelve feet higher than the current structure.

Our conclusion that the covenant here is ambiguous is supported by decisions of other courts, most of which have found similar language ambiguous and unenforceable. *See Hiner v. Hoffman,* 90 Hawai'i 188, 977 P.2d 878, 880 (1999)(covenant language prohibiting dwellings more than "two stories in height" is ambiguous and unenforceable); *Metius v. Julio,* 27 Md.App. 491, 342 A.2d 348, 353 (1975) ("We are persuaded that the meaning of the express 'three stories in height' used in this particular equitable restriction, is ambiguous."); *Ludwig v. Chautauqua Shores Improvement Ass'n,* 5 A.D.3d 1119, 1120, 774 N.Y.S.2d 240, 241 (2004) (language limiting dwellings to "not more than one and one-half stories in height" is " 'uncertain, doubtful, or debatable,' thus rendering it unenforceable"); *Johnson v. Linton,* 491 S.W.2d 189, 197 (Tex. Civ.App.1973) (phrase "one and one-half stor[ies] in height" is ambiguous because it is "reasonably susceptible to more than one meaning").

While we acknowledge that some courts have found this language to be unambiguous and supportive of injunctive relief, we find those decisions unpersuasive. *See King v. Kugler,* 197 Cal.App.2d 651, 655, 17 Cal.Rptr. 504, 507 (1961)("we see nothing vague, ambiguous or uncertain in the meaning of the restrictive phrase 'one story in height' "); *Pool v. Denbeck,* 196 Neb. 27, 241 N.W.2d 503 (1976) (concluding, without discussion, that covenant limiting the height of structures to two stories was not ambiguous); *Dickstein v. Williams,* 93 Nev. 605, 608, 571 P.2d 1169, 1170–71 (1977) (affirming trial court's finding that "one story from ground level" was not ambiguous).

Nevertheless, the Allens contend that, when the restrictive covenants are read in their entirety, it is clear that the underlying purpose of the height restriction covenant is to protect neighboring homeowners' views of the nearby lake. Specifically, they point to the introductory statement of the covenants, which provides that the covenants were "set forth to the end that harmonious and attractive development of the property may be accomplished." However, the Reeds disagree with this interpretation. The Reeds contend that the covenants do not contain language that specifically protects a property owner's view of the lake, and they correctly recognize that Colorado courts resolve doubts against unclear restrictions and "in favor of free and unrestricted use of property." *Buick, supra,* 21 P.3d at 862.

Thus, the uncertainty in the covenant's use of the term "one story" rendered it unenforceable when applied to the Reeds' addition.

### C.

■ The Reeds also contend that the trial court erred when, in the absence of such language in the covenants, it adopted the 1952 UBC definition for "finished grade." We agree.

Colorado courts have refused to rewrite covenants or add terms that are not contained in the covenants. *See Richey, supra.*

Here, the covenants did not define the term "finished grade," from which the "height of any dwelling house" is measured. Although at trial the Allens presented expert testimony that "finished grade" has been uniformly defined in the industry, since at least 1952, as the lowest point adjacent to a structure, the Allens' experts also noted that earlier definitions of "finished grade" and lowest point involved an averaging methodology.

The Reeds point out that their house sits on a slope. Thus, if measured from the "upper finished grade," their addition would have satisfied the trial court's "single story" definition. However, the covenants themselves do not provide any definition of "finished grade." Nor do the covenants reference any industry standards. Accordingly, it was error for the trial court to add any definition not otherwise stated in or referenced by the covenants. *See Richey, supra.*

## II.

The Reeds request an award of attorney fees and costs incurred in connection with this appeal. Pursuant to C.A.R. 39.5, if attorney fees are otherwise recoverable for a particular appeal, the party claiming them must specifically request them, and state the legal basis therefor, in the party's principal brief to the appellate court. Because the Reeds have not stated a legal basis for their request, their request is denied.

Because of our holding, we need not address the parties' remaining arguments.

The judgment is reversed.

Judge TAUBMAN and Judge GRAHAM concur.