**VISTA RIDGE MASTER HOME-
OWNERS ASSOCIATION, INC.,**
Plaintiff–Appellee,

v.

**ARCADIA HOLDINGS AT VISTA
RIDGE, LLC, Defendant–
Appellant.**

**Court of Appeals No. 12CA0967**

Colorado Court of Appeals,
Div. II.

Announced February 28, 2013

Weld County District Court No. 11CV610, Honorable Dinsmore Tuttle, Judge.

Michael B. Levy, LLC, Michael B. Levy, Lakewood, Colorado, for Plaintiff–Appellee.

Lottner Rubin Fishman & Saul, PC, Christopher J. Dawes, Dominic H. Rivers, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE MILLER

¶ 1 Defendant, Arcadia Holdings at Vista Ridge, LLC (Arcadia), appeals summary judgment in favor of plaintiff, Vista Ridge Master Homeowners Association, Inc. (HOA). Specifically, Arcadia contends that the district court erroneously (1) interpreted section 38–33.3–210(4)(b), C.R.S.2012, and the Master Declaration of Covenants, Conditions and Restrictions for Vista Ridge (the Declaration) to prohibit Arcadia's attempt to withdraw and de-annex certain lots from a platted portion of the common interest community after other lots in that portion had been sold and (2) ordered interest to accrue at an annual rate of eighteen percent on attorney fees awarded to the HOA.

¶ 2 We conclude:

- as a matter of first impression, that section 38–33.3–210(4) (subsection 210(4)), of the Colorado Common Interest Ownership Act (CCIOA), §§ 38–33.3–101 to –401, C.R.S.2012, prohibits and invalidates Arcadia's attempted withdrawal and de-annexation, and
- pursuant to the terms of the Declaration, the HOA is entitled to recover interest at an eighteen percent annual rate on its attorney fee award.

We therefore affirm the district court's judgment and remand for an award of appellate attorney fees.

## I. Background

¶ 3 The recording of the Declaration established Vista Ridge as a common interest community. Article V of the Declaration reserved the right to withdraw or de-annex any portion of the community in accordance with CCIOA. The Declaration limited this right to the extent "that no portion of the Property may be withdrawn or de-annexed after a Lot or Unit in that portion of the Property has been conveyed to an Owner other than a Declarant or a Builder."

¶ 4 Arcadia's predecessor in interest recorded Vista Ridge Filing No. 9, which platted ninety-four single family residential lots. Those ninety-four lots were annexed to the common interest community by the recording of a Declaration of Annexation and Amendment to the Declaration (Declaration of Annexation), which expressly describes the lots as "Lot 1 through Lot 94, Vista Ridge Filing No. 9." Through annexation, the ninety-four lots became subject to all the provisions in the Declaration, including the right to withdraw and de-annex and the restrictions on that right.

¶ 5 Prior to the filing of this action, Arcadia remained the owner of seventy of the ninety-four lots in Filing No. 9. At least eight of the other lots in Filing No. 9 had been sold to parties who were neither declarants nor builders. Arcadia recorded an Amendment to Declaration of Covenants, Conditions and Restrictions for Vista Ridge, in which it purported to withdraw and de-annex its remaining seventy lots from the community. The HOA challenged the de-annexation in a complaint for declaratory judgment and damages based on the language of the Declaration and CCIOA.

¶ 6 The district court granted summary judgment in favor of the HOA, declaring that the de-annexation of the seventy lots was invalid. The district court subsequently entered a monetary judgment for past-due monthly assessments on the seventy lots plus attorney fees, all accruing interest at an annual rate of eighteen percent. Arcadia appeals both the declaratory judgment and the application of the eighteen percent rate to the attorney fees.

## II. Withdrawal and De–Annexation

¶ 7 Arcadia first argues that the district court erred in holding that the de-annexation of the remaining seventy lots was invalid

under both the Declaration and CCIOA. We disagree.

### A. Standard of Review

■ ¶ 8 We review an order granting summary judgment de novo. *Lombard v. Colorado Outdoor Educ. Center, Inc.*, 187 P.3d 565, 570 (Colo.2008). We also conduct de novo review of a district court's interpretation of a statute, *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.*, 21 P.3d 860, 864 (Colo.2001), and of a declaration of covenants, conditions, and restrictions, *id.* at 862.

### B. Analysis

¶ 9 When construing a statute, our primary goal is to give effect to the intent of the General Assembly. *Lombard*, 187 P.3d at 570. We start with the statute's plain language. *Id.* We will apply the statute as written if it is clear and unambiguous on its face. *Id.* " Generally, we afford the words of the statute their ordinary and common meaning and construe the statutory provisions as a whole, giving effect to the entirety of the statute." *Id.* We will not construe a statute in a way that leads to an absurd result. *Town of Erie v. Eason*, 18 P.3d 1271, 1276 (Colo.2001).

¶ 10 We conclude that CCIOA is determinative of this issue for three reasons. First, Section 5.1(F) of the Declaration reserves the right to withdraw or de-annex property from the HOA "in accordance with [CCIOA] ." Second, while Section 5.1(G) contains additional language concerning the right to withdraw or de-annex and restrictions on that right, the parties agree that subsection 210(4) and section 5.1(G) are essentially identical. Third, section 38–33.3–104, C.R.S.2012, provides that "[e]xcept as expressly provided in [CCIOA], provisions of [CCIOA] may not be varied by agreement, and rights conferred by [CCIOA] may not be waived." Thus, if subsection 210(4) prohibits the withdrawal and de-annexation at issue in this case, then we need not separately consider the language in Section 5.1(G). We therefore turn to whether CCIOA prohibits Arcadia from de-annexing the seventy lots.

¶ 11 The parties agree that the provision of CCIOA that controls Arcadia's right to de-

annex the remaining seventy lots is subsection 210(4)(b). According to this provision, "[i]f any portion of the real estate is subject to withdrawal, it may not be withdrawn after a unit in that portion has been conveyed to a purchaser." The parties disagree, however, on the meaning of "portion" in this subsection. The HOA contends that, in this instance, "portion" refers to the ninety-four lots constituting Filing No. 9 annexed into the community. Arcadia argues that this definition is arbitrary and the statute is ambiguous. When viewed in context, however, we conclude the meaning of "portion" in the statute is clear and unambiguous.

¶ 12 Subsection 210(4) governs when a declaration subjects "all or a portion of the real estate" to a right of withdrawal. It imposes parallel restrictions depending on whether the real estate is divided into portions:

(a) If all the real estate is subject to withdrawal, *and the declaration does not describe separate portions of real estate subject to that right,* none of the real estate may be withdrawn after a unit has been conveyed to a purchaser; and

(b) If *any* portion of the real estate is subject to withdrawal, it may not be withdrawn after a unit in that portion has been conveyed to a purchaser.

§ 38–33.3–210(4) (emphasis added). Subsection 210(4)(a) applies only if "the declaration does not describe separate portions of real estate." Subsection 210(4)(b) thus applies if the declaration *does* describe separate portions that are subject to withdrawal. "Portion" as used in subsection 210(4)(b) must therefore refer to a *described* portion as used in subsection 210(4)(a).

■ ¶ 13 Filing No. 9, and the subsequent Declaration of Annexation, describe a separate portion of Vista Ridge—the ninety-four lots—and stipulate that this portion is subject to all of the terms, provisions, conditions, and reservations set forth in the Declaration, which include the right of withdrawal in accordance with CCIOA. Therefore, Lot 1 through Lot 94 of Filing No. 9 constitute a portion of real estate subject to withdrawal, and that portion may not be withdrawn after one of the lots within it has been conveyed to

a purchaser.[1] It is irrelevant that there may be smaller "portions" within Filing No. 9, because subsection 210(4)(b) applies to *any* portion, not just the smallest possible portion. Thus, under CCIOA, the entirety of the ninety-four lots in Filing No. 9 constitutes the relevant portion for purposes of subsection 210(4)(b).

¶ 14 This construction harmonizes the two provisions in subsection 210(4). Under subsection 210(4)(a), if the real estate is not divided into described portions, once one unit is conveyed, no other units may be withdrawn. Subsection 210(4)(a) thus provides predictability for unit owners: they know that the surrounding lots will remain a part of the common interest community. As applied here, this mirrors the result where Filing No. 9 constitutes a portion under subsection 210(4)(b): the owners of the lots conveyed have the assurance the surrounding lots within that portion will also be a part of the community, their lots will conform to the community's covenants and restrictions, and their owners will pay assessments to fund common improvements in the community. Subsection 210(4)(b), therefore, balances the rights of unit owners, while also protecting the rights of developers of other portions (those portions not included within Filing No. 9) in the community. If we construe "portion" in any other manner, subsection 210(4)(b) would eliminate the protections afforded to unit owners and, thus, would be inconsistent with subsection 210(4)(a). Moreover, developers could avoid the restrictions in subsection 210(4)(b) simply by arbitrarily designating a part of their property as a "portion" of a larger "portion."

¶ 15 Arcadia attempts to support its argument by directing us to a comparison of the Uniform Common Interest Ownership Act (UCIOA) and the Uniform Condominium Act, as legislative history of CCIOA. Given that we have concluded that the language of subsection 210(4) is clear and unambiguous, we do not resort to legislative history. *Smith v. Executive Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo.2010).[2]

¶ 16 Thus, we conclude that CCIOA prohibits Arcadia from de-annexing the seventy lots.

### III. Interest on Attorney Fees

¶ 17 Arcadia also argues the district court erred by ordering a monetary judgment that accrued interest on the HOA's attorney fee award at an annual rate of eighteen percent. We are not persuaded.

### A. Standard of Review

█ ¶ 18 As discussed above, construction of the Declaration is a matter of law and is reviewed de novo. *Buick*, 21 P.3d at 862. To interpret a declaration, we "must 'follow the dictates of plain English' " to construe the document as a whole. *Id.* (quoting *Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n*, 773 P.2d 1046, 1048 (Colo.1989)). If a declaration is clear on its face, we will enforce it as written. *Id.*

### B. Analysis

¶ 19 Arcadia relies on *Weston v. T & T, LLC*, 271 P.3d 552, 560–61 (Colo.App.2011), to support its argument that the district court's conclusion regarding the accrual of interest on the attorney fee award was in error. This reliance is misplaced.

¶ 20 In *Weston*, a division of this court made a fact-specific determination based on the language used in a promissory note. 271 P.3d at 560. There, the trial court awarded interest at the rate of twenty percent per annum on the creditor's attorney fees. *Id.* at 559–60. The note, however, stated, "If Maker is in Default, interest shall accrue and be payable *on the unpaid principal balance of this Note, and all accrued and unpaid inter-*

---

1. "Purchaser" is defined in section 38–33.3–103(24), C.R.S.2012, as a person other than a declarant or a dealer who acquires a legal or equitable interest in a unit, not including a leasehold of less than forty years or a security interest. "Dealer" is in turn defined in section 38–33.3–103(11), C.R.S.2012, as a person in the business of selling units for such person's own account. A

dealer would include a builder, the term used in the Declaration.

2. Arcadia concedes that it has found no reported decisions from other jurisdictions that have adopted versions of UCIOA interpreting provisions similar to subsection 210(4). Nor have we.

*est,* from and after the date of any such Default at twenty percent (20%) per annum...." *Id.* at 560. A division of this court vacated the award of twenty-percent interest on attorney fees, holding that this language was unambiguous in allowing such interest only on the principal and accrued but unpaid interest. *Id.* at 560–61. The language used in the Declaration at issue here is not analogous and, thus, *Weston* does not apply.

██ ¶ 21 Section 7.6 of the Declaration states that " *[a]ny assessment* not paid" is "subject to fees authorized by Section 7.2, including ... interest from the due date at the rate of eighteen percent (18%) per annum" (emphasis added). The Declaration refers to attorney fees as assessments three times:

- Section 7.2(C) states that attorney fees "may be assessed against the Owner's Lot or Unit as Common Expense Assessments."

- Section 7.3(A) states that attorney fees "are enforceable as assessments."

- Section 7.3(E) states that "[a] judgment or decree in any action brought under this Section shall entitle the Association to costs and reasonable attorney fees, which shall be additional Common Expense Assessments."

Thus, according to the plain language of the Declaration, attorney fees are clearly a type of assessment. Because the Declaration states that *any* assessment is subject to an annual interest rate of eighteen percent, we conclude that the district court did not err in ordering a monetary judgment in which attorney fees were subject to the eighteen percent interest rate.

### IV. Appellate Attorney Fees

¶ 22 Both parties concede that the prevailing party is entitled to attorney fees under section 38–33.3–123(1)(c), C.R.S.2012, and the Declaration. Because we affirm the judgment, the HOA may therefore recover its appellate attorney fees and costs.

¶ 23 The judgment is affirmed and the case is remanded for further proceedings on appellate attorney fees consistent with this opinion.

JUDGE CASEBOLT and JUDGE NAVARRO concur.