24CA1703 Hallman v Willowbrook 07-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1703
Summit County District Court No. 24CV6
Honorable Karen A. Romeo, Judge

Howard E. Hallman, Jr.,

Plaintiff-Appellant,

v.

Willowbrook Meadows Owners Association Board of Directors,

Defendant-Appellee.

JUDGMENT AND ORDER AFFIRMED
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

Howard E. Hallman, Jr., Pro Se

Allen & Curry, P.C., Michael P. Curry, Theodore A. Wells, Denver, Colorado, for
Defendant-Appellee

¶ 1    Plaintiff, Howard E. Hallman, Jr., appeals the district court's entry of summary judgment in favor of defendant, Willowbrook Meadows Owners Association Board of Directors (Board), Hallman's homeowners association board.  He also appeals the district court's award of attorney fees and costs to the Board.  We affirm.

I.    Background

¶ 2    In September 2023, the town of Silverthorne began negotiating with the Board to purchase common-area property owned by the Willowbrook Meadows Owners Association (HOA).  In February 2024, Hallman filed the complaint in this case against the Board.  The complaint alleged that the HOA and Silverthorne had entered into a property transfer agreement in violation of article 3.2(g) of the HOA's articles of incorporation, which requires that two-thirds of the HOA members approve any "transfer" of common-area property to a public authority.

¶ 3    However, the HOA never transferred the property pursuant to a property transfer agreement.  Instead, in March 2024, after Hallman filed his complaint in this case, Silverthorne petitioned to condemn the property under eminent domain in a separate case.

1

¶ 4    After the condemnation petition, the parties submitted cross-motions for summary judgment in this case.  The district court granted the Board summary judgment, ruling that because Silverthorne took the property through eminent domain, article 3.2(g) did not require member approval.  The district court therefore dismissed all Hallman's claims with prejudice.  The court then granted the Board's motion for attorney fees and costs.

¶ 5    Hallman appeals the grant of summary judgment and the fees and costs award.  We disagree with his arguments and affirm.

## II.    Summary Judgment

¶ 6    Hallman argues that granting the Board summary judgment was error because the transfer required member approval under article 3.2(g), disputed material facts precluded summary judgment, and the district court cited and relied on the record in the condemnation action.

¶ 7    We review the district court's grant of summary judgment de novo.  *Univ. of Denver v. Doe*, 2024 CO 27, ¶ 7.  Summary judgment is appropriate if the material facts are undisputed, and the moving party is entitled to judgment as a matter of law.  *Id.*

## A. Article 3.2(g) Was Not Triggered

¶ 8    Hallman first argues that *any* condemnation of HOA property by eminent domain constitutes a "transfer" within the meaning of article 3.2(g) and therefore triggers the member approval requirement.

¶ 9    We interpret an HOA's governing documents de novo, applying the same rules as those we use to interpret statutes. *Vista Ridge Master Homeowners Ass'n v. Arcadia Holdings at Vista Ridge, LLC*, 2013 COA 26, ¶¶ 8-9. If the provision is clear and unambiguous, we apply it as written. *Id.* at ¶ 9. We consider the provision as a whole, giving effect to the entire instrument and avoiding interpretations that lead to absurd results. *Id.* Applying these principles here, we conclude that a condemnation via eminent domain is not a "transfer" within the meaning of article 3.2(g).

¶ 10    Article 3.2(g) provides that the HOA can

> dedicate, sell or transfer all or any part of the Common Area to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the members. No such dedications or transfers will be effective unless an instrument has been signed by two-thirds (2/3) of the members, agreeing to such dedication, sale, or transfer.

¶ 11     We take Hallman's point that a condemnation transfers property ownership from the property owner to a public authority. But the plain language of article 3.2(g) contemplates that a transfer can be rendered ineffective if an insufficient number of members do not approve it. And a condemnation cannot be rendered ineffective in this way. When property is condemned via eminent domain, the owner has no ability to stop the transfer; the owner can only contest the amount of compensation owed. *See Wilson v. Frederick R. Ross Inv. Co.*, 180 P.2d 226, 261-62 (Colo. 1947). Because an article 3.2(g) "transfer" can be unilaterally undone if a sufficient number of HOA members disapprove it, and no level of disapproval by HOA members can stop a condemnation, a condemnation is not a "transfer" within the meaning of article 3.2(g).

¶ 12     A contrary conclusion would lead to an absurd result. The member approval requirement in article 3.2(g) has a single purpose: It allows a large enough minority of members to render a property transfer ineffective. But even unanimous member opposition to an eminent domain condemnation would have no effect on the public entity's acquisition of the property. Requiring member approval in this situation would be meaningless and absurd — the public

authority would take the property no matter what. We therefore reject Hallman's argument that an eminent domain condemnation is a transfer for purposes of article 3.2(g)'s approval requirement.[1]

¶ 13     Hallman makes a second alternative argument. He argues that even if a condemnation does not trigger article 3.2(g)'s approval requirement, the negotiations that occurred *before* the condemnation petition was filed did. We disagree.

¶ 14     The plain language of article 3.2(g) requires member approval for a dedication, sale, or transfer. There was no dedication, sale, or transfer during the negotiations and before Silverthorne filed the condemnation petition. There was only a *potential* sale or transfer. And an actual sale or transfer never materialized. Therefore, no approval was required.

---

[1] This conclusion necessarily rejects Hallman's argument that, even if the members were not entitled to approve the transfer, they were still entitled to approve the amount of compensation Silverthorne owed the HOA. The approval requirement applies only to a "dedication, sale or transfer," not a condemnation. Because this was a condemnation, no approval was required for any aspect of it.

## B.    There Were No Disputed Material Facts

¶ 15    Hallman also argues that there was a disputed issue of material fact that precluded summary judgment: whether Silverthorne and the Board agreed on a sale price before the condemnation petition was filed.  Hallman claims there was an agreement, while the Board claims there was not.[2]  This dispute does not matter because the existence of an agreement was not material to the district court's summary judgment ruling.

¶ 16    A material fact is one that will affect the outcome of the case. *Sender v. Powell*, 902 P.2d 947, 950 (Colo. App. 1995).  If, as Hallman contends, there was an agreement, it did not lead to a dedication, sale, or transfer that would have triggered article 3.2(g)'s approval requirement.  Therefore, any dispute about the existence of an agreement did not affect the outcome of the case, was not material, and could not have precluded summary judgment.

---

[2] Neither party cites any evidence in the record on this issue. Instead, they both cite their own filings in which they claim there either was or was not an agreement.

### C. Reliance on Condemnation Case

¶ 17     Hallman next argues that the district court erred "by citing and relying on [the condemnation action]" because it is "not part of the record and not available for Court of Appeals review." Hallman does not provide any authority or additional argument explaining why this was error.[3] We deem this argument conclusory and unsupported by substantial authority. We therefore do not address it. *See Manka v. Martin*, 614 P.2d 875, 880 (Colo. 1980) (pro se parties are held to the same procedural rules as represented parties); *Taylor v. Taylor*, 2016 COA 100, ¶ 13 (declining to address contentions unsupported by substantial argument).

### III. Attorney Fees and Costs Award

¶ 18     Finally, Hallman challenges the district court's award of attorney fees and costs to the Board. The court awarded the fees and costs under section 38-33.3-123(1)(c)(I), C.R.S. 2024, the mandatory fee-shifting provision of the Colorado Common Interest

---

[3] In the answer brief, the Board presumes Hallman is arguing that the district court improperly took judicial notice of the condemnation action. But Hallman says nothing about judicial notice or the circumstances under which taking judicial notice is proper or improper.

Ownership Act (CCIOA). Hallman argues that CCIOA's fee-shifting provision did not apply.

¶ 19    We generally review an award of fees and costs for an abuse of discretion. *In re E.K.*, 2022 CO 34, ¶ 30. But we review de novo whether the relevant statute authorized a fees and costs award. *Id.*; *see Accetta v. Brooks Towers Residences Condo. Ass'n*, 2021 COA 147M-2, ¶ 17. We reject Hallman's challenge to the award.

¶ 20    CCIOA's fee-shifting provision requires courts to award the prevailing party its reasonable attorney fees and costs in "any civil action to enforce or defend . . . the declaration, bylaws, articles, or rules and regulations." § 38-33.3-123(1)(c)(I). Hallman's action fits this description. It sought to enforce article 3.2(g) of the HOA's articles. And there is no question that the Board was the prevailing party.

¶ 21    It is also clear that this fee-shifting provision applies here even though the HOA was created in the 1970s. Although many CCIOA provisions apply only to common interest communities created after 1992, the fee-shifting provision is not one of them. The fee-shifting provision applies to "all common interest communities created within this state before July 1, 1992, with respect to events and

8

circumstances occurring on or after July 1, 1992." § 38-33.3-117(1)(g), C.R.S. 2024. We therefore conclude that CCIOA's fee-shifting provision not only authorizes but requires the fees and costs award here.

¶ 22 Hallman further argues that even if the Board was entitled to fees and costs, the amount of that award should have been limited to $5,000 under section 38-33.3-123(1)(c)(II). Again, we disagree.

¶ 23 Section 38-33.3-123(1)(c)(II) caps fees and costs awards at $5,000 for actions "to collect money owed to an association from a unit owner." This was not an action by the HOA to collect money Hallman owed it. It was an action by Hallman to enforce the HOA's articles of incorporation. Therefore, the $5,000 cap does not apply.

¶ 24 Hallman raises additional arguments in his opening brief challenging the fees and costs award. But he did not raise these additional arguments in the district court. We therefore do not address them. *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("A party's mere opposition to its adversary's request, however, does not preserve all potential avenues for relief on appeal. We review only the specific arguments a party pursued before the district court.").

9

## IV.    Appellate Attorney Fees and Costs

¶ 25    The Board requests its attorney fees and costs incurred in this appeal under C.A.R. 39.1 and CCIOA's fee-shifting provision, discussed above.  Because the Board prevailed in this appeal, we conclude that section 38-33.3-123(1)(c)(I) requires us to grant this request.  *See Accetta,* ¶ 51.

## V.    Disposition

¶ 26    The district court's judgment in favor of the Board is affirmed, as is the award of fees and costs to the Board.  The Board's request for its reasonable appellate attorney fees and costs is granted, and we remand to the district court with directions to determine that amount.

JUDGE LIPINSKY and JUDGE LUM concur.