25CA0941 Beaver Plaza v Ballou 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0941
Summit County District Court No. 24CV30019
Honorable Reed W. Owens, Judge

Beaver Plaza Condominium Owners' Association, Inc.,

Plaintiff-Appellant,

v.

Kelly Ballou and I Am Free LLC d/b/a Pinnacle Property Management, LLC,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE FOX
J. Jones and Dunn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

Bowlin & Schall LLC, John M. Bowlin, Greenwood Village, Colorado, for Plaintiff-Appellant

Business Law Group, Mason Simpson, Maria Amparo McCormick, David Q. McAdams, Colorado Springs, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Beaver Plaza Condominium Owners' Association, Inc. (the Association), appeals the district court's order granting partial summary judgment to defendants, Kelly Ballou and I am Free LLC d/b/a Pinnacle Property Management, LLC (together, Ballou Owners).  This case stems from a disagreement over who should bear the cost of a construction project at a condominium complex in Frisco, Colorado.  For the following reasons, we reverse the judgment and remand the case for further proceedings consistent with this opinion.

## I.     Background

¶ 2     The Association manages Beaver Plaza, a condominium complex that consists of eight commercial units on the ground floor (Units A through H) and eight residential units on the second floor (Units 1 through 8).  Beaver Plaza is a common interest ownership community subject to a "Condominium Declaration" (the Declaration).  The Declaration includes property maps and plats in addition to written community guidelines.

¶ 3     A structure at the front of the complex serves as a patio for the second-floor units and as a roof for the pedestrian walkway outside of the first-floor units.  This structure includes the "Floor System,"

classified as a "Common Element." Article III of the Declaration defines "Common Element" as

> all the property other than the Units. The Common Elements predominantly include the unimproved land surrounding the Units, structural walls and plumbing facilities which are located within a Unit but serve other Units, water and sewer lines and facilities serving the project . . . and the parking areas and driveways depicted on the Plat. The term Common Elements shall also include Limited Common Elements, which are exclusively reserved for use by an Owner or as otherwise provided in this Declaration.

¶ 4 Residential owners exclusively use the surface above the "Floor System" as a "Deck." The "Deck" is a "Limited Common Element," defined as "a portion of the Common Elements allocated by the Declaration or Map for the exclusive use of one or more Owners but fewer than all Owners." The following maps, included in the Declaration, depict this arrangement.[1]

---

[1] The parties and Declaration refer to the drawings as maps, though they may be more appropriately categorized as diagrams. These maps label "Common Elements" as "C.E." and Limited Common Elements as "L.C.E."



¶ 5    In 2022, the Association determined that the drains and drain facilities located on and underneath the "Deck" needed repairs.

3

Due to inadequate draining, water from snowmelt was threatening to damage the "Floor System" and causing large icicles to form above the pedestrian walkway. Two architects surveyed the building and identified incorrect liner and concrete placement, improper deck slope, and an insufficient number and location of drains. The image below details the proposed repairs, which were expected to exceed $250,000.



Drain Project's Proposed Repairs

¶ 6    The Declaration instructs the Association to maintain "the Common Elements [and] Limited Common Elements," and collect "the assessments and charges created under the Declaration."  In pertinent part, the Declaration provides that all repair assessments must be made equally to each of the sixteen units, but "[a]ny Common Expenses associated with the maintenance, repair or replacement of a Limited Common Element will be assessed against the Units to which that Limited Common Element is assigned, pro rata according to the Allocated Interest of such Units."  The Association determined that the drain repair project (the Drain Project) was associated with Common Elements and assessed costs equally against all owners — residential and commercial.  But because only second-floor residential owners make exclusive use of the "Deck," the Association also assessed additional expenses against these owners for the cost of upgrading the tile decking.

¶ 7    The Ballou Owners, who occupied three first-floor commercial units, refused to pay their share of the assessment because they believed only the second-floor owners who make use of the "Deck" were responsible for the cost of the Drain Project.  The Association then sued the Ballou Owners for the outstanding payment.  The

Ballou Owners moved for partial summary judgment on the grounds that the Declaration unambiguously requires that expenses "associated with" Limited Common Elements be assessed against the second-floor-unit owners, and the Drain Project was associated with the "Deck."

¶ 8    The district court agreed and granted partial summary judgment to the Ballou Owners. The court reasoned that the drains and related systems are physically and functionally part of the "Deck" and do not meet the Declaration's definition of a Common Element. Thus, the court found that the costs of the Drain Project were to be assessed only against the residential owners who make use of the "Deck." The Association then filed a motion for reconsideration, which the district court denied.

¶ 9    The Association argues on appeal that the district court erred by determining that the drainage system is a Limited Common Element by way of association with the "Deck." The Association contends that, when construed as a whole, the Declaration establishes that the drain facilities are part of the "Floor System" — a Common Element — and all owners at Beaver Plaza are equally responsible for the cost of the Drain Project. Alternatively, should

6

we conclude that the Declaration is ambiguous, the Association asks that we reverse the summary judgment and remand the case so a fact finder can resolve the ambiguity. We conclude that the Declaration is ambiguous, reverse the judgment, and remand the case for further proceedings.

## II. The District Court Erred by Granting Summary Judgment

### A. Standard of Review

¶ 10 "Summary judgment is appropriate when the pleadings and supporting documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gibbons v. Ludlow,* 2013 CO 49, ¶ 11. We review de novo an order granting summary judgment, applying the same standard as the lower court to determine "whether a genuine issue of material fact exists and whether the district court correctly applied the law." *City & County of Denver v. Monaghan Farms, Inc.,* 2023 COA 60, ¶ 20. We also review de novo the construction of a condominium declaration. *Vista Ridge Master Homeowners Ass'n v. Arcadia Holdings at Vista Ridge, LLC,* 2013 COA 26, ¶ 18.

### B. Applicable Law and Analysis

¶ 11    The Colorado Common Interest Ownership Act provides that a condominium declaration includes not only the recorded document entitled "declaration" but also all recorded plats and maps. § 38-33.3-103(13), C.R.S. 2025. Courts apply principles of contract interpretation to declarations, "seeking to ascertain and give effect to the intentions of the party or parties who created the instrument" through the language of the instrument itself. *Quarky, LLC v. Gabrick*, 2024 COA 76, ¶ 11. When interpreting the declaration, courts "construe the instrument as a whole" and aim to "harmonize and give effect to all provisions." *Id.*

¶ 12    "If a declaration is clear on its face, we will enforce it as written." *Vista Ridge*, ¶ 18. However, if the declaration is susceptible of more than one reasonable interpretation, or if provisions conflict, it is ambiguous and its meaning becomes an issue of material fact. *Gagne v. Gagne*, 2014 COA 127, ¶ 51. Thus, an ambiguous declaration is not suitable for summary judgment. *See Lewitz v. Porath Fam. Tr.*, 36 P.3d 120, 124 (Colo. App. 2001).

¶ 13    The Association argues that the district court "fundamentally changed the intent of the Declaration" by determining that repairs

"connected to" a Limited Common Element must be paid for by those who make use of the Limited Common Element. The Association maintains that the Drain Project benefited all owners, and, thus, all owners should pay. The Association further contends that the district court misinterpreted the maps included in the Declaration, confusing the "Floor System (C.E.)," "Deck (L.C.E.)," and the drainage features housed therein with the colloquial word "deck." The Association asserts that, when read as a whole, the Declaration establishes that the portions of the property in need of repairs are Common Elements.

¶ 14     In contrast, the Ballou Owners contend that the drains are "embedded in and integral to the decks." They argue that the Association's attempt to recast the Drain Project as a repair of Common Elements fails because the drains and related systems do not fit the Declaration's definition of Common Element. Thus, according to the Ballou Owners, the district court rightfully granted partial summary judgment because the Drain Project is associated with a Limited Common Element.

¶ 15     Both interpretations of the Declaration are plausible. When compared side-by-side with the Declaration's "Section C" map

(included above), the image depicting the Drain Project (also included above) suggests that the "Floor System" *and* "Deck" house the drains and related water-dispelling facilities. While the drains themselves are located on the surface of the "Deck," several repairs — including waterproofing, installing new piping and heat tape, removing the suspended ceiling, and replacing water drainage sections in retail spaces — implicate the "Floor System." Thus, one could read the Declaration and conclude that the drains and related facilities are Common Elements because several structures are located within the "Floor System." *See Morales v. CAMB*, 160 P.3d 373, 375 (Colo. App. 2007) (plats and maps, along with "notes, lines, [and] descriptions . . . control[] so far as limits are concerned, as if such descriptive features were written out" in the document). The Association's position therefore has merit.

¶ 16    However, the drain system may not fit the definition of a Common Element because the system does not comprise "unimproved land," "parking areas," or "water and sewer lines." And while Colorado's Plumbing Code includes "all building drains" in its definition of "plumbing," § 12-155-103(8)(a), C.R.S. 2025, the drains here are not "plumbing facilities . . . *located within a Unit* but

10

serv[ing] other Units" (emphasis added) as the Declaration requires. Rather, they are located in an external structure. Thus, the Ballou Owners' argument has appeal because the drain system may not qualify as a Common Element under the Declaration's definition of the term.

¶ 17     Two reasonable and conflicting interpretations render the Declaration ambiguous, and the issue is therefore unsuitable for summary judgment. *See Gagne*, ¶ 51. We reverse and remand the case so a fact finder may resolve the ambiguity. *See id.* If the evidence presented supports the Association's interpretation, all owners — residential and commercial — will incur the cost of any repairs to Common Elements. But if the evidence supports the Ballou Owners' position, repairs to any property features properly characterized as Limited Common Elements are chargeable only to those owners who make use of the Limited Common Element.

### III.    The Parties' Requests for Attorney Fees

¶ 18     Beaver Plaza and the Ballou Owners request appellate attorney fees. We decline to award either party their fees under C.A.R. 39.1, which grants us discretion to determine entitlement to fees. Beaver Plaza or the Ballou Owners may be able to recover

such fees depending on who prevails in the district court, "and we leave that question for consideration in that forum." *Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 41.

## IV. Disposition

¶ 19    The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE J. JONES and JUDGE DUNN concur.